Everett Don ARLINE, Appellant,

v.

The STATE of Texas, Appellee.

No. 170–86.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 10, 1986.

Ronald Plessala, Nederland, for appellant.

James S. McGrath, Dist. Atty., and R.W. Fisher, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR
DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of the offense of voluntary manslaughter. V.T. C.A. Penal Code, § 19.04 (1974). The jury assessed punishment at confinement for twenty (20) years in the Texas Department of Corrections and a $10,000 fine.

The Beaumont Court of Appeals reversed appellant's conviction, holding that the trial court committed reversible error in failing, after timely objection, to include a definition of "reasonable belief" [1] in the jury charge at the guilt/innocence stage of the trial. *Arline v. State*, 690 S.W.2d 20 (Tex.App.—Beaumont 1984). We then summarily granted the State's petition for discretionary review and remanded the cause to the Court of Appeals for reconsideration in light of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985) (establishing different standards for reviewing harmfulness of preserved and unpreserved jury charging error). *Arline v. State*, No. 079–85 (Tex.Cr.App. Nov. 13, 1985) (per curiam, unpublished).

Upon reconsideration, the Court of Appeals again reversed appellant's conviction, holding that the trial court's failure to define "reasonable belief" in the jury charge had caused appellant "some" harm. *Arline v. State*, 702 S.W.2d 755 (Tex.App.—Beaumont 1986). We again granted the State's petition for discretionary review to determine whether the Court of Appeals correctly applied *Almanza*, supra. We will reverse and remand.

I.

Appellant was charged with murder for "intentionally and knowingly caus[ing] the death of Darrell Quinn Jones by beating him with a gun and hitting him with a mop handle." (R. I-2). See Art. 19.02, V.T.C.A. Penal Code (1974). Only a brief recitation of the relevant facts surrounding this event is necessary.

On October 22, 1982, appellant, wanting to speak with his estranged girlfriend Mary Route, broke a window in the bedroom of her apartment from the outside. Darrel Quinn Jones, having been in the bedroom watching television with Mary Route, exited the apartment and confronted appellant with a pellet pistol. A fight ensued, and appellant wrestled the pistol from Jones and hit Jones several times with it. The pistol broke into several pieces and the fight continued. Appellant then obtained a mop handle and hit Jones several times with it. Finally, the police arrived and appellant fled. Jones died shortly afterward.

Appellant was arrested later that evening at a relative's house. He made a written and signed confession to the police that included the following statements:

He [Jones] was holding a gun of some sort in one of his hands and acted like he was trying to shoot me. He was trying to click it and it didn't shoot[. H]e kept trying to shoot and we both ran at each other and started to fight. We chased each other arround [sic] the apartments and fought for several minutes. I finally got the gun away from him and was hitting him with it.

During his trial, appellant testified that he acted in self-defense after Jones confronted him with what appellant thought was a "real" pistol. Appellant also testified that Jones continued the combat even after appellant had taken the pistol from him.

The jury was charged on the law of murder, voluntary manslaughter and self-defense. The abstract portion of the charge on self-defense reads as follows:

When a person is attacked with unlawful deadly force, or he *reasonably believes* he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the

---

1. "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." V.T.C.A., Penal Code § 1.07(a)(31) (1974).

law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he *reasonably believes* immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he *reasonably believed* such force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force. (R. I–28) (emphasis added). The application portion of the charge reads as follows:

Therefore, even if you believe from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof that the defendant EVERETT DON ARLINE, used deadly force as alleged in the indictment, but that on such occasion the defendant *reasonably believed*, as viewed from his standpoint at the time, this use of deadly force was immediately necessary to protect himself against the victim's actual or apparent use or attempted use of unlawful deadly force and; (1) a reasonable person in the defendant's situation would not have retreated and (2) that the defendant *reasonably believed* that the use and degree of deadly force he used was immediately necessary to protect himself against the victim's actual use or apparent use of unlawful deadly force, or if you have a reasonable doubt thereof, you should find the defendant not guilty.

However, if you believe from the evidence beyond a reasonable doubt that, at the time and place in question, the defendant either: (1) did not *reasonably believe* that the victim was actually or apparently using or attempting to use deadly force against him, or (2) that a reasonable person in the defendant's situation would have retreated, you will find against the defendant on this plea of justification.

(R. I–29) (emphasis added).

Prior to submission of the charge to the jury, appellant objected "that there is no definition or instruction on what 'reasonable belief' is." (R. III–290). The trial court overruled the objection.

During final argument on guilt/innocence, appellant's attorney made the following argument relevant to appellant's "reasonable belief":

Now, self-defense—It is to be viewed through Everett Arline's eyes, as to what was happening to him that night. That part of the test is a subjective test.

You, also, have to, in a sense, wear two hats in this matter, even though you are viewing it through his eyes, his responses have to be that of a *reasonable* person. What is *reasonable*—Usually *reasonable* people will have to decide. We may all act differently, but you keep in mind, it is within the spectrum of how human beings act in this world. We are all on the fringes of reacting differently. All of us are within some norm that we can live with in our society. That is how you are to judge self-defense.

(R. III–300) (emphasis added).

The State responded with the following argument:

But, at the time that he got that gun away from him, I ask you, and look at this Charge because this is where the law is so important—A person *reasonably believes* that force is immediately necessary—Now, after he's got the gun away from him, and Quinn is standing there with nothing, you tell me what person is going to *reasonably believe* that you have to continue to beat somebody with an object so bad that they die? That's not there. It's just not there. It won't work.

There's no self-defense in this case because at the time the beating occurred, Quinn has no—simply has no object—has

no deadly weapon on him. [Appellant] has it at that time. ·

(R. III–325–26) (emphasis added).

## II.

On direct appeal, appellant alleged that it was error for the trial court to refuse to define the term "reasonable belief" in the jury charge. The Court of Appeals could find no authority controlling appellant's point of error but reasoned that the Legislature intended for the jury to be informed of its own definitions for words and phrases used in the Penal Code. *Arline*, 690 S.W.2d at 20.

After this Court remanded this cause for reconsideration in light of *Almanza*, supra, the Court of Appeals determined that appellant had been harmed in the following manner:

A complete reading of the court's charge persuades us that the appellant was harmed by the court's failure to define "Reasonable belief" in the charge; certainly that seems to be the intention of our legislature.

*Arline*, 702 S.W.2d at 756. We must now determine whether the Court of Appeals properly applied the harmless error standard of *Almanza*, supra.

## III.

■ In *Almanza*, this Court held that Article 36.19, V.A.C.C.P. (1974),[2] prescribes the manner in which jury charge error is reviewed on appeal. 686 S.W.2d at 171. Instead of automatically reversing convictions for technical charging errors, an appellate court must undertake a two-step process of review. First, an appellate court must determine whether error exists in the charge. Second, the appellate court must determine whether sufficient harm was caused by the error to require reversal

of the conviction. *Id.* See *Jones v. State*, 720 S.W.2d 535, 536 (Tex.Cr.App.1986).

■ The degree of harm that must be present to require reversal of a case depends upon whether the error was preserved or unpreserved. Concerning error that was preserved at trial by a timely and specific objection, that error must have been "calculated to injure the rights of [the] defendant." Article 36.19, V.A.C.C.P. (1974); *Almanza*, supra, at 171. In other words, a defendant must have suffered "some" actual, rather than theoretical, harm from the error. *Id.*

■ Presumably, this Court chose the term "some" to indicate the minimum degree of harm necessary for reversal of cases involving preserved charging error. However, that term was left undefined.[3] We now expressly find that, in the context of *Almanza*, supra, and Article 36.19, supra, the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred. See *id.* at 171 ("In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.").

■ For error that was not preserved at trial, the error must have been so harmful that the defendant was denied "a fair and impartial trial." In other words, a defendant must have suffered actual "egregious" harm. *Id.* For both preserved and unpreserved charging error, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument

---

2. Article 36.19, supra, provides:
   Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not

had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

3. Strictly speaking, "some" indicates "an unknown, undetermined, or unspecified unit or thing." Webster's New Collegiate Dictionary 1107 (5th ed. 1977).

of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The Court of Appeals determined that charging error occurred in the instant case. See *Arline*, 690 S.W.2d at 20. Indeed, the State does not challenge the Court of Appeals' holding that the trial court erred by failing to include the statutory definition of "reasonable belief" in the jury charge.[4] The State only challenges the Court of Appeals' holding that the error was harmful enough to require a reversal.

■ Appellant properly preserved the charging error in the instant case. The Court of Appeals, therefore, was obligated to determine whether the error "was calculated to injure the rights of [appellant]" before reversing appellant's conviction. Art. 36.19, V.A.C.C.P.; *Almanza*, supra, at 171. Using this formula, the Court of Appeals was required to examine the relevant portions of the *entire* record to determine whether appellant suffered *any* actual harm as a result of the error.

The State argues that the Court of Appeals, in analyzing the instant case for the presence or absence of harm, incorrectly limited its review of the record to the jury charge. We agree.

By focusing exclusively upon the charge, the Court of Appeals failed to consider the harmfulness of the charging error in the context of the *entire* record. We must now review the entire record to determine

whether appellant was harmed by the trial court's failure to include a definition of "reasonable belief" in the jury charge.

As observed in note 4, *ante*, this Court has had two opportunities to determine whether a defendant was harmed by a trial court's refusal, over objection, to include a statutory definition in the jury charge. See *MacDougall*, supra; *Mosley*, supra. An analysis of the record in those cases provides some guidance for analyzing the instant case.

In *MacDougall*, this Court reversed a defendant's conviction for theft of an automobile because the trial court refused to include a statutory definition of the word "deception" in the charge. 702 S.W.2d at 652. This Court found that the defendant had suffered "some" harm because "[t]he State was required to prove that [defendant] acquired the car without the owner's effective consent[,]" and "[d]eception was the only theory available to the State on the evidence." *Id.*[5]

In *Mosley*, this Court affirmed a defendant's convictions for committing three aggravated robberies because the defendant had not suffered any harm as a result of the trial court's refusal to include a statutory definition of the phrase "bodily injury" in the jury charge. 686 S.W.2d at 182. No harm had occurred because the State's evidence of "bodily injury" was undisputed. *Id.* In addition, we noted that "bodily injury" "is not a complex or unusual term, and

---

4. The State's concession is understandable. A trial judge is responsible for delivering to the jury "a written charge distinctly setting forth the law applicable to the case." Art. 36.14, V.A.C. C.P. (1974). A charge could not fully set forth that law without including the definitions of those words and phrases that have been legislatively provided. See V.T.C.A., Penal Code § 1.07 (1974) (listing statutory definitions of words and phrases); V.T.C.A., Government Code § 311.011(b) (1986 Pamphlet) (providing that legislatively defined words and phrases "shall be construed accordingly"); V.T.C.A., Penal Code § 1.05(b) (1974) (generally applying § 311.011 of Code Construction Act to Penal Code); see also *MacDougall v. State*, 702 S.W.2d 650 (Tex.Cr.App.1986) (trial judge refused to include statutory definition of "deception"); *Mosley v. State*, 686 S.W.2d 180, 182 (Tex.Cr.App.

1985) (trial judge refused to include statutory definition of "serious bodily injury").

In *MacDougall*, without directly stating that the trial judge was required to include statutory definitions in the jury charge, this Court held that the failure to do so was harmful. 702 S.W.2d at 652. In *Mosley*, this Court found it unnecessary to answer the question because the error, if any, was harmless. 686 S.W.2d at 182. However, both cases at least inferentially support the conclusion that a statutorily defined word or phrase must be included in the charge as part of the "law applicable to the case."

5. We also note that the statutory definition of "deception" is specialized, apart from its common meaning. See V.T.C.A., Penal Code § 31.-01(2)(A), (B) & (E) (1974).

the legal definition is much like the common meaning of the word.[6] Taking this into consideration, along with the facts, we [did] not believe [defendant] was harmed by the error." *Id.* at n. 2.

In the instant case, appellant presented an affirmative defense of self-defense to the jury. Central to an understanding of that defense was the term "reasonable belief." In particular, the jury was confronted with two questions: (1) Did appellant have a reasonable belief that he was under unlawful attack by deadly force? and (2) Did appellant reasonably believe that the degree of force that he employed in his response to that attack was immediately necessary?

While there was a dispute in the evidence relevant to both questions, there is nothing in the record to indicate that the jury was misled or left ignorant of how the term "reasonable belief" was to be applied to the self-defense portion of the charge.[7] The charge consistently advised the jury to consider the "reasonable belief" from appellant's viewpoint, thus incorporating a part of the definition within the abstract and application portions of the charge.

We acknowledge that the charge did not explicitly inform the jury that it must measure the reasonableness of appellant's belief by deciding whether an "ordinary and prudent man" would have held the same belief. However, the wording of the charge benefited appellant by instructing the jury to consider the reasonableness of appellant's belief from *his* viewpoint. As such, the jury could have accepted appellant's standard of reasonableness even if they thought it differed from an objective standard of reasonableness.

Furthermore, Appellant argued the statutory definition of "reasonable belief" during jury argument, and the State did not dispute its meaning.[8] The State disagreed with appellant's argument that the evidence showed that his belief was reasonable. However, the State did not encourage or suggest to the jury that it disregard appellant's viewpoint or that it apply an inappropriate standard of reasonableness. The State only argued that, even from appellant's viewpoint, *no person* would have reasonably believed that further force was immediately necessary once the pistol was taken from Jones.

Given these circumstances, we find that appellant was not harmed by the trial court's failure to include a statutory definition of "reasonable belief" in the jury charge. Cf. *Mosley,* supra.

The judgment of the Court of Appeals is reversed and this cause is remanded for the Court of Appeals to consider appellant's remaining points of error.[9]

CLINTON and MILLER, JJ., dissent believing that some harm was demonstrated.

ONION, P.J., concurs.

---

6. V.T.C.A., Penal Code § 1.07(a)(7) (1974), defines "bodily injury" as "physical pain, illness, or any impairment of physical condition."

7. The meaning of "reasonable belief" is consistent with its common understanding, except that a jury must consider the belief from the defendant's viewpoint. V.T.C.A., Penal Code, § 1.07(a)(31).

8. We acknowledge that jury argument is not a substitute for a proper jury charge. However, it can be relevant in determining whether a jury was being misled by a misstatement of the law, thus causing harm to a defendant.

9. Appellant asks this Court to consider two points of error not yet decided by the Court of Appeals. (Reply to Pet. for Disc. Rev., at 10–14). However, our review is limited to those points of error decided by the courts of appeals, included in petitions for discretionary review and granted as grounds for review. See Tex.R.App. Pro. 200 & 202.