Terry Wayne **BRUTON**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–94–307–CR.

Court of Appeals of Texas,
Fort Worth.

May 2, 1996.

Law Office of Larry M. Moore, Larry M. Moore, Fort Worth, for Appellant (On Appeal only).

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, Elizabeth A. Martin, Anne Box and Phil Sorrels, Assistants, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAUPHINOT and CHUCK MILLER (Assigned), JJ.

## OPINION

CAYCE, Chief Justice.

A jury convicted Terry Wayne Bruton of aggravated robbery and assessed his punishment at seventy-five years' confinement and a $10,000 fine. On appeal, Bruton raises five points of error complaining that the trial court erred 1) in denying his motion to suppress an in-court identification of him by the complaining witness, 2) in denying his motion for mistrial following an allegedly improper jury argument by the State, 3) in denying his objection to the jury charge on the basis that it authorized a finding that he acted as a "principal" because the evidence is insufficient to support such a finding, 4) in failing to submit at the punishment phase a special issue regarding Bruton's use of a deadly weapon, and 5) in including a deadly weapon finding in the judgment when there was no such finding by the jury. Bruton's first three points of error are overruled. We sustain points of error four and five and reform the judgment to delete the deadly weapon finding from the judgment.

On August 1, 1992, Rickey Alan Rice went to the Cowtown Inn Motel in Fort Worth sometime between 10:30 and 11:00 p.m. to visit a friend. Rice and his friend walked across the street to a small park behind the motel and sat down on a picnic table to talk. Within minutes, a man approached the couple and asked for a cigarette. When Rice turned to reach for his cigarettes, he was hit in the head with a roofing hatchet and knocked onto the ground.

As he lay on the ground, Rice saw one man standing in front of him and Bruton standing behind him. Rice's friend had disappeared leaving him alone with the two men. Bruton and his accomplice demanded money from Rice. When he resisted, pleading for them not to take his money, the two men kicked him in the back and ripped his wallet out of the back pocket of his shorts. Bruton's accomplice then held the hatchet close to Rice's face and threatened to "come back and finish the job" if he got up before the men left. As the two assailants fled the scene, Rice attempted to follow them, but abandoned his pursuit when he reached the motel. Rice spent at least ten days in the hospital recovering from his wounds.

■ In his first point of error, Bruton complains that Rice's in-court identification of him was tainted by an allegedly unduly suggestive photo spread that Rice was subjected to before trial. The photo spread was shown to Rice ten months after the robbery, and Rice identified Bruton out of the seven men in the lineup as one of his assailants.

■ The in-court identification of a defendant is generally admissible unless it is shown by clear and convincing evidence that the complaining witness's in-court identification of the defendant as the assailant was tainted by improper pretrial identification procedures, e.g., an unduly suggestive photo spread. *Jackson v. State*, 628 S.W.2d 446, 448 (Tex.Crim.App. [Panel Op.] 1982). The task of proving that the in-court identification was tainted has been described by the court of criminal appeals as a "difficult and heavy burden" for a defendant to meet. *Id.*

■ The United States Supreme Court has held that even if a pretrial identification procedure is suggestive and unnecessary, the admission of in-court identification testimony is nevertheless admissible as long as the identification possesses sufficient aspects of reliability. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972); *see Garza v. State*, 633 S.W.2d 508, 512–13 (Tex.Crim.App.1982) (op. on reh'g). In determining reliability, the totality of the circumstances must be reviewed, and the following factors considered: 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's description of the criminal, 4) the witness's level of certainty, and 5) the length of time between the crime and the confrontation. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154; *Neil*, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411; *Garza*, 633 S.W.2d at 513. For an in-court identification to be reliable, the record must clearly reflect that the witness's observation of the accused during the offense was sufficient to serve as

an independent origin for the in-court identification. *Clay v. State*, 518 S.W.2d 550, 554 (Tex.Crim.App.1975).

Throughout the hearing on Bruton's motion to suppress Rice's in-court identification, Rice repeatedly testified that his identification of Bruton, both at trial and in the photo spread, was based solely on his recollection of the robbery on August 1, 1992. Rice stated that, although the robbery occurred at night, the moon was out, and there was light coming from a nearby house. According to Rice, there was sufficient light for him to see Bruton and his accomplice, and he was able to get a "good look" at both men. The evidence also shows that Rice had a sufficient amount of time to view his assailants during the course of the robbery. Rice said that he pleaded with his assailants not to take his money and that after the robbery took place, he chased them. Moreover, when Rice was shown the photo spread, he immediately, and without hesitation, picked out Bruton as one of his assailants. Later, at a live lineup requested by Bruton just before trial, Rice again picked Bruton out of seven different men. There is no evidence in the record indicating that Rice was ever uncertain about the identity of Bruton as one of his attackers.

Without deciding whether the photo spread was unduly suggestive, we conclude that, under the totality of the circumstances, Rice's in-court identification of Bruton as the robber was of an independent origin and, therefore, was admissible. The trial court did not err in overruling Bruton's motion to suppress the in-court identification of him. Point of error one is overruled.

In his second point of error, Bruton contends that the trial court erred in denying his motion for mistrial following an allegedly improper comment in the State's jury argument. The complained-of argument is as follows:

And Page Four [of the jury charge] talks about robbery. There are two things— They are two different types of crimes. That's why on the last page, your verdict forms, Page Seven, there are three things for you to decide, aggravated robbery, robbery, or not guilty.

The reason there are two on there, aggravated robbery is a first degree felony. Robbery is a second degree felony. *And what we are talking about, there is a range of punishment. Robbery, second degree robbery, is from two to twenty*—[Emphasis supplied.]

Defense counsel objected to the prosecutor's reference to the range of punishment on the ground that punishment is not appropriate jury argument at the guilt-innocence stage of the trial. The trial court sustained the objection and, upon Bruton's request, instructed the jury to "disregard the argument regarding ranges of punishment in this stage of the trial." Bruton then moved for a mistrial, which the trial court denied.

■ Bruton asserts that this type of argument was manifestly improper and that the instruction to disregard by the court was insufficient to cure the harm caused by the argument. The State does not contest Bruton's assertion that the argument was improper. We will, therefore, assume the comment was improper jury argument for the limited purpose of this appeal.

■ To be permissible, jury argument must fall within one of the following four general areas: 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answer to argument of opposing counsel, or 4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Gaddis v. State*, 753 S.W.2d 396, 397 (Tex.Crim.App.1988); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973); *Stout v. State*, 865 S.W.2d 609, 611 (Tex.App.—Fort Worth 1993, pet. ref'd). However, even if jury argument is improper, an instruction to disregard the statements is generally sufficient to cure the error. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Swallow v. State*, 829 S.W.2d 223, 226–27 (Tex.Crim.App. 1992). Reversible error occurs only when statements to the jury are extreme, manifestly improper, inject new or harmful facts into

the record, or violate a mandatory statute. *Cooks,* 844 S.W.2d at 727; *Gaddis,* 753 S.W.2d at 397; *Miller v. State,* 741 S.W.2d 382, 392 (Tex.Crim.App.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988).

It is improper to discuss ranges of punishment during the guilt-innocence stage of a trial involving two or more offenses because it encourages the jury to convict on the basis of the amount of punishment, rather than the facts supporting guilt. *See McClure v. State,* 544 S.W.2d 390, 393 (Tex. Crim.App.1976). However, the harm from such remarks generally will be cured by an instruction to disregard, unless the statements were so manifestly improper as to inflame and prejudice the minds of the jury. *See id.*

There is nothing in the record of this case to suggest that the prosecutor's abbreviated reference to punishment was not cured by the trial court's instruction to disregard. The prosecutor referred to only *one* range of punishment—that for robbery. The jury did not hear argument about the applicable range of punishment for *aggravated* robbery. Therefore, the jury was not encouraged to choose between the two offenses on the basis of a comparison between punishments, rather than the facts presented.

Furthermore, the prosecutor in this case promptly abandoned the issue of punishment upon receiving the trial court's instruction and did not refer to it again during the remainder of his closing argument. We find that the reference to a single range of punishment by the prosecutor was not of such a damning character that it would be impossible to remove the harmful impression from the minds of the jurors. *See Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Thus, any error created by the prosecutor's comment was cured by the trial court's instruction to the jury to disregard the improper comment. Bruton's second point of error is overruled.

In point of error three, Bruton asserts that the trial court erred in submitting a jury charge that permitted the jury to convict him on a theory not supported by the evidence, i.e., that he acted as a principal in committing aggravated robbery. Bruton contends that there is no evidence to support submission on the theory that he was the principal actor in the offense of aggravated robbery.

In reviewing jury charge error, an appellate court must undertake a two-step process. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). First, we must determine whether error exists in the charge. *Arline,* 721 S.W.2d at 351. Second, we must conduct a review of the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *See* Tex. Code Crim.Proc.Ann. art. 36.19 (Vernon 1981); *Arline,* 721 S.W.2d at 351; *Watson v. State,* 693 S.W.2d 938, 940 (Tex.Crim.App. 1985).

The degree of harm that must be present to require reversal of a case depends upon whether the error was preserved or not. *Arline,* 721 S.W.2d at 351. When error was preserved at trial by a timely and specific objection, as it was in this case, reversal is required if the error was "calculated to injure the rights of [the] defendant." *Id.; Watson,* 693 S.W.2d at 940. In other words, a defendant must have suffered some actual, rather than theoretical, harm from the error. *Arline,* 721 S.W.2d at 351.

For both preserved and unpreserved charging error, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including [the] contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 351–52; *Watson,* 693 S.W.2d at 940; *Almanza,* 686 S.W.2d at 171. Moreover, review of the charge itself must not be limited to certain parts, but instead the charge must be viewed as a whole. *Reyes v. State,* 741 S.W.2d 414, 426 (Tex.Crim.App.1987).

In the first portion of the charge in this case, the court properly instructed the jury on the law of parties. The next portion

of the charge applied the law of aggravated robbery to the facts of the case as follows:

> Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Terry Wayne Bruton, ... did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of the said property, threaten and place Rickey Rice in fear of imminent bodily injury or death, and you further find that the Defendant did then and there use or exhibit a deadly weapon, to-wit: a roofing hatchet, ... then you will find the Defendant guilty of aggravated robbery; *or* if you find from the evidence beyond a reasonable doubt that an unknown person ... did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of the said property, threaten and place Rickey Rice in fear of imminent bodily injury or death, and you further find that the unknown person did then and there use or exhibit a deadly weapon, to-wit: a roofing hatchet ... *and that the Defendant, Terry Wayne Bruton, then and there, acting with intent to promote or assist the commission of the offense, if any, aided an unknown person to commit the offense, if any, by his own actions and conduct during the commission of the said offense,* if any, then you will find the Defendant guilty of aggravated robbery.
>
> Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, then you will find the Defendant not guilty of aggravated robbery.... [Emphasis supplied.][1]

To prove that Bruton was guilty of aggravated robbery under the first clause of the application paragraph, the "principal" clause, it was necessary for the State to prove that Bruton used or exhibited the roofing hatchet. *See* TEX.PENAL CODE ANN. § 7.01(a) (Vernon 1994); *Jones v. State,* 815 S.W.2d 667, 670–71 (Tex.Crim.App.1991). Although it was undisputed that a deadly weapon—the hatchet—was used, Rice testified that Bruton's accomplice, and not Bruton, was the one who exhibited the hatchet and used it to threaten him. This evidence does not support the finding that Bruton was guilty of aggravated robbery as a "principal." *See Jones,* 815 S.W.2d at 671; *Martin v. State,* 830 S.W.2d 333, 334 (Tex.App.—Houston [14th Dist.] 1992, no pet.). Therefore, under the evidence of this case, if Bruton was guilty of aggravated robbery at all, it was as a "party" only. We, therefore, find that the trial court erred in charging the jury in the first clause of the application paragraph on aggravated robbery as a "principal."

However, we find that no harm accrued to Bruton as a result of this language in the charge. The jury was clearly instructed that before they could return a guilty verdict, they had to find beyond a reasonable doubt either that Bruton used or exhibited the hatchet while committing the robbery *or* that he "aided" another person who did use or exhibit the hatchet while committing the robbery. It is undisputed that there was sufficient evidence to find that Bruton aided his accomplice in committing the robbery and that the accomplice used the hatchet to threaten Rice. This evidence is sufficient to support the second clause of the application paragraph—aggravated robbery on a parties theory. Furthermore, a review of the State's jury argument shows that the State was proceeding solely on the theory that Bruton was guilty as a party.[2] Based on these facts, we

---

1. Bruton contends that the court's failure to set forth in the charge the specific conduct that he allegedly committed as a party contributed to the error in the charge. However, the court was not required to do this because a "general" application of the law to the facts is sufficient to charge the jury on the law of parties. *Chatman v. State,* 846 S.W.2d 329, 332 (Tex.Crim.App.1993). Moreover, Bruton did not request a more specific application paragraph or object to the lack of specificity in the court's charge; thus, he has waived this complaint. TEX.R.APP.P. 52(a).

2. The following statements by the prosecutor indicate the State's reliance on a parties theory:
   > Ladies and Gentlemen, this man [Bruton] and his buddy are responsible for what happened to Rickey Rice....
   >
   > ....
   >
   > There is no robbery in this case. It becomes aggravated the moment that this hatchet was picked up by his accomplice, his buddy. The moment that this hatchet was impaled into his head, it became an aggravated robbery. There is no robbery in this case.

find that the jury could not have been misled by the "principal" language in the charge. *See Watson*, 693 S.W.2d at 941 (jury was not misled by charge, which authorized them to find defendant guilty if he "acting alone or as a party" committed crime, because State proceeded solely on parties theory).

 Moreover, as the court of criminal appeals noted in *Watson:*

> [A] charge requiring the jury to find that a defendant acted alone increases the State's burden and thus benefits the defendant. In the instant case then the State would have had to satisfy a heavier burden in proving to the jury that the appellant acted alone in committing the burglary. If anything, appellant was helped by the court's charge. We find the error to have been harmless.

*Id.* at 942. Like the court in *Watson,* we fail to see how Bruton was harmed by the "principal" charge.[3] Point of error three is overruled.

 In his fourth and fifth points of error, Bruton complains of the court's failure to submit a special issue concerning the use of a deadly weapon at the punishment phase, and of the court's recital in its judgment that the jury affirmatively found that Bruton used or exhibited a deadly weapon when, in fact, no such finding was made by the jury.

At the punishment stage of the trial, the State requested that a special issue concerning Bruton's use of a deadly weapon be removed from the court's charge to the jury. The court sustained the request and, over Bruton's objection, removed the special issue from its charge. However, after the jury's verdict, the court nevertheless entered on its judgment that "THE JURY AFFIRMATIVELY FINDS THAT THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON ... DURING THE COMMISSION OF THE OFFENSE."

The State concedes that the court erred in entering the affirmative finding because the charge at the guilt-innocence stage of trial did not contain any language requiring the jury to make such a finding and because the special issue on use of a deadly weapon was removed from the punishment charge. The State argues, however, that because no harm has accrued to Bruton, we need not remand the case for a new punishment trial, but instead we should reform the judgment to delete the deadly weapon finding. We agree. Accordingly, we sustain points of error four and five and reform the judgment to delete the finding that Bruton used or exhibited a deadly weapon.

The judgment, as reformed, is affirmed.

---

Hold him accountable for what he did back on August 1st. Hold him accountable for his participation in this offense.

3. Bruton argues that the harm he suffered was exacerbated by the fact that "the Court refused to submit the lesser included offense of robbery on a parties theory." However, Bruton was not entitled to a "party" lesser included offense instruction as to robbery. Because it was uncontroverted that a weapon was used in the offense, Bruton, if guilty as a party, could only have been guilty of *aggravated* robbery. *See Jackson v. State*, 700 S.W.2d 704, 707 (Tex.App.—Houston [1st Dist.] 1985, no pet.).