Ananias **CABRERA**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–96–519–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 8, 1998.

Earl R. Waddell, III, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Chief of the Appellate Section, Donald J. Piller, Bill Durkin, John Cope, Asst. Crim. Dist. Attys., Fort Worth, for Appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

DAY, Justice.

A jury convicted Appellant Ananias Cabrera of illegal investment as alleged in the indictment. The trial court assessed punishment at sixteen years' confinement and imposed a $50,000 fine.

On appeal, Cabrera raises four points. In his first point, Cabrera contends that the evidence is legally insufficient to show that he invested or financed funds with the intent to commit aggravated possession of a controlled substance. In his second and third points, he asserts that the evidence is legally and factually insufficient to show that he acted as a party to the offense of illegal investment. Cabrera's fourth point alleges

that the trial court erred in submitting a jury charge that included legal theories not supported by the evidence. Because the evidence was sufficient and the jury charge was proper, we affirm.

## BACKGROUND

On May 17, 1993, acting on a tip from a confidential informant, Euless Police Officer Michael Duff met with Cabrera to discuss a potential drug deal. Cabrera told Duff that his people were interested in purchasing one to three kilos of cocaine and he had been sent to make sure Duff could supply that quantity of drugs. Cabrera said that he had to report his findings to the "money man"—the individual supplying the funds for the drug deal. To convince Cabrera that he could deliver the requested drugs, Duff showed him a kilo of cocaine that he had checked out of the police evidence locker, pretending that it was on its way to another customer. After viewing the drugs, Cabrera told Duff that he was interested in making a deal. Duff told Cabrera to contact him as soon as his money supplier had the funds.

Duff later learned from his informant that Cabrera's money supplier could not purchase the drugs. At the same time, Duff learned that another individual was interested in buying cocaine from him. Duff subsequently met with Rogerro Goeva, an agent for the new money supplier, on May 26, 1993. During the meeting, Goeva asked to see Duff's kilo of cocaine. Duff replied, "I've already shown one of y'all my cocaine, my kilo, and I've yet to see any money." Goeva said that he needed to see the cocaine himself. Duff showed Goeva the cocaine and told Goeva to contact him when the money was ready. They parted without arranging another meeting. On May 27, 1993, Duff learned from his confidential informant that a buyer was ready to make a purchase. Although the drug deal was originally to take place in the parking lot of a Hurst restaurant, Duff found Cabrera, Goeva, and another man waiting in a pickup truck in a discount store parking lot not far from the restaurant. Duff did not know the driver, but recognized Cabrera and Goeva from his meetings with them. As Duff got out of his car, all three men got out of the truck. Cabrera and Goeva stood on the passenger's side, while the driver, later identified as Abel Carrillo, stayed on the driver's side of the truck.

As Duff approached, Cabrera smiled and nodded at him. Duff greeted the three men and asked who had the money. Carrillo did not respond to Duff's greeting and looked surprised. Carrillo looked at Cabrera and Goeva and they nodded to him. Carrillo, looking back at Duff, answered that he had the money and pulled a grocery sack from behind the driver's seat of the truck. Carrillo and Duff walked to Duff's car while Cabrera and Goeva stayed with the truck. Carrillo gave Duff the money bag and Duff handed Carrillo a gym bag containing the cocaine. Duff gave the arrest signal and a police surveillance team arrested Carrillo, Goeva, and Cabrera.

## SUFFICIENCY OF THE EVIDENCE

In his first point, Cabrera contends that the evidence is legally insufficient to prove that he financed or invested funds to further the offense of aggravated possession of cocaine. In his second and third points, Cabrera argues that he was merely present during the May 27 drug deal and thus the evidence is legally and factually insufficient to prove that he acted as a party to the offense of illegal investment.

### 1. Standard of Review

#### A. *Legal Sufficiency*

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the judgment. *See Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Emery v. State*, 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The judgment may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson,* 819 S.W.2d at 846.

### B. *Factual Sufficiency*

This court has the authority to review fact questions in criminal cases. *See Clewis v. State,* 922 S.W.2d 126, 129–30 (Tex.Crim.App. 1996). In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.'" *Id.* at 129 (citing *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). We may only set aside the judgment if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* In performing this review, we are to give "appropriate deference" to the fact finder. *Id.* at 136.

### 2. Applicable Law

The State charged Cabrera with illegal investment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.126(a)(2) (Vernon Supp.1998). A person commits the offense of illegal investment by knowingly or intentionally financing or investing funds that the person knows or believes are intended to further the commission of the aggravated delivery, possession, or manufacture of a controlled substance. *Id.* Although Cabrera argues that the evidence is insufficient to show that he financed or invested any funds with intent to possess a controlled substance, the court's charge properly instructed the jury on the law of parties. *See Tell v. State,* 908 S.W.2d 535,

539 (Tex.App.—Fort Worth 1995, no pet.) (trial court may submit a charge on the law of parties if it is supported by the evidence, even if not alleged in the indictment). Consequently, even if Cabrera did not provide the funds used in the drug purchase, the jury could still return a guilty verdict if it found beyond a reasonable doubt that Cabrera acted as a party to the offense.

### 3. The Law of Parties

 An actor is criminally responsible as a party to an offense if, acting with intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid another person to commit the offense. TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2) (Vernon 1994). The evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement. *See Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Cordova v. State,* 698 S.W.2d 107, 111 (Tex.Crim.App.1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). The evidence must show that, at the time of the offense, the parties were acting together, each contributing to their common purpose. *See Burdine,* 719 S.W.2d at 315. In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to commit the offense. *See id.; Michel v. State,* 834 S.W.2d 64, 67 (Tex.App.—Dallas 1992, no pet.). Although mere presence of the accused at the scene of the offense will not support a conviction, it is a circumstance which, combined with other facts, may show that the accused was a participant. *See Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Crim.App.1987); *Valdez v. State,* 623 S.W.2d 317, 321 (Tex.Crim.App. [Panel Op.] 1981) (op. on reh'g); *Michel,* 834 S.W.2d at 67.

In order to find Cabrera guilty as a party to illegal investment, the State had to prove

that (1) Carrillo intentionally or knowingly financed or invested funds that he knew or believed were intended to further the commission of the offense of aggravated possession of a controlled substance, and that (2) Cabrera, acting with intent to promote or assist in the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Carrillo in committing the offense. On appeal, Cabrera does not contend that the evidence is insufficient to support a finding that Carrillo committed the offense of illegal investment. Thus, we need only consider whether the evidence is sufficient to show that Cabrera acted as a party to the offense.

In *Garza v. State*, the defendant challenged the trial court's finding that he acted as a party to the sale of a controlled substance. *See* 573 S.W.2d 536, 537 (Tex.Crim. App. [Panel Op.] 1978). The evidence at trial showed that Garza and an undercover narcotics agent had traveled together to another town looking for a person known as El Gorrilon to buy heroin from him. *Id.* Although they were unsuccessful in finding El Gorrilon, a man named Nava offered to sell heroin to the police officer. *Id.* The officer testified that Garza looked at Nava's heroin sample and said that he thought it looked all right. *Id.* After the drug purchase, Garza demanded three grams of heroin for his part in the deal. *Id.* The court of criminal appeals affirmed Garza's conviction, holding that there was sufficient evidence for the jury to find Garza criminally responsible for Nava's actions. *Id.* at 537–38. The court noted that by inspecting the heroin sample and telling the officer that he thought it was all right, Garza encouraged the officer to go through with the purchase and thus aided Nava. *Id.*

In this case, we find that the evidence is both factually and legally sufficient to support the jury's finding that Cabrera was a party to the offense of illegal investment. Cabrera discussed purchasing cocaine from Duff and was present when the actual drug purchase occurred. Additionally, when Carrillo looked surprised at Duff's greeting and inquiry regarding who had the money, Cabrera encouraged the drug purchase by nodding at Carrillo to verify Duff's identity as the "cocaine man." According to Duff's testimony, Cabrera assisted Carrillo by "checking Duff out" at the May 17 meeting to lessen the possibility that Duff was a police officer. Duff also testified that Carrillo, Goeva, and Cabrera were working together and that the May 17 meeting with Cabrera was part of a single transaction culminating with the drug sale on May 27.

Furthermore, when Goeva asked to see the cocaine during the May 26 meeting, Duff's statement that he had already shown his cocaine to "one of y'all" clearly implied that Goeva and Cabrera were part of the same operation. However, Duff testified that Goeva did not act surprised or confused at the implication, and merely reaffirmed that he needed to see the kilo himself. The jury, as the trier of fact, could reasonably infer from this testimony that Goeva and Cabrera were part of the same organization and that Cabrera was present at the May 27 meeting to aid in the commission of the offense. Moreover, regardless of whether Cabrera was representing some other "money man" on May 17, a rational juror could conclude that Cabrera used that opportunity to "check out" Duff and his cocaine, and then passed along his information at the May 27 meeting with intent to encourage Carrillo to buy Duff's cocaine. We thus find that there was legally sufficient evidence for a rational jury to conclude that Cabrera acted as a party to the offense of illegal investment. Cabrera's second point is overruled.

In Cabrera's third point, he argues that the evidence is factually insufficient to support a finding that he acted as a party to the offense. After reviewing all of the evidence, a factual sufficiency challenge will be sustained only where a finding would be so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Clewis*, 922 S.W.2d at 126. In this case, Cabrera argues that the evidence is factually insufficient because Duff's testimony established that Cabrera's money man was unable to come up with the drug money. Moreover, Duff testified that Cabrera had no weapons, no large amounts of cash, was not the driver of the truck, and Duff was uncertain whether Cabrera knew that the grocery sack containing the money was behind the front seat.

In addition, Cabrera argues that Goeva's involvement in the drug deal precludes Cabrera from being a party to the offense. Specifically, he argues that because Goeva had investigated Duff and the cocaine on May 26, Carrillo had no need of Cabrera's acknowledgment that Duff was the cocaine supplier. However, Cabrera fails to explain how Goeva's actions are in any way inconsistent with his own involvement. Duff testified that during his meeting with Cabrera on May 17, Cabrera mentioned that he and the "people that he was involved with" were interested in buying a kilo of cocaine. The jury could infer from this comment and the other evidence presented at trial that Cabrera worked with a group of individuals in his drug transactions, and that his group included Carrillo and Goeva. The fact that Cabrera did not have any money or weapons with him does not lessen his involvement, nor does the fact that Duff did not know whether Cabrera was aware that the money was behind the driver's seat. None of this evidence is contrary to a finding that Cabrera intended to encourage Carrillo to buy the cocaine from Duff. Accordingly, we hold that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust and we overrule Cabrera's third point.

We turn briefly to Cabrera's first point, in which he argues that the evidence is legally insufficient to prove that he acted as a principal during the offense of illegal investment. It is well-settled that when a general verdict is returned and the evidence is sufficient to support a finding of guilt under any of the allegations submitted, the verdict will be upheld. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 125, —— L.Ed.2d —— (1997); *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim.App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993); *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim. App.1992), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). In this case, the court's charge contained paragraphs alleging Cabrera's guilt as both a principal and a party. Accordingly, because we have determined that the evidence is sufficient to find Cabrera guilty as a party to the offense, we overrule his first point.

## JURY CHARGE

In his fourth point, Cabrera contends that the court erroneously charged the jury on the application of the facts to the law authorizing his conviction as a party. According to Cabrera, the trial court's charge permitted the jury to convict him on the basis of facts not supported by the evidence.

In reviewing jury charge error, we undertake a two-step process. *See Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App. 1996); *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g); *Bruton v. State*, 921 S.W.2d 531, 536 (Tex.App.—Fort Worth 1996, pet. ref'd). First, we must determine whether error exists in the charge. *See Hutch*, 922 S.W.2d at 171; *Arline*, 721 S.W.2d at 351; *Bruton*, 921 S.W.2d at 536. Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *See Hutch*, 922 S.W.2d at 171; *Arline*, 721 S.W.2d at 351; *Bruton*, 921 S.W.2d at 536.

The degree of harm necessary for reversal depends on whether the error was preserved. *See Hutch*, 922 S.W.2d at 171; *Arline*, 721 S.W.2d at 351; *Bruton*, 921 S.W.2d at 536. An error properly preserved by an objection must be reversed unless it is harmless. *See Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171. However, when the charging error is not preserved, reversal is not required unless the harm is egregious. *See Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171. In determining whether error is egregious, we look at the actual degree of harm, in light of (1) the entire jury charge, (2) the state of the evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the trial record as a whole. *See Hutch*, 922 S.W.2d at 171. "[E]rrors which result in egregious harm are those which affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defense theory.'" *Id.* (quoting *Almanza*, 686 S.W.2d at 172). In other words, the error

must have been so harmful that the defendant was effectively denied a fair and impartial trial. *See* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981). However, egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *See Hutch*, 922 S.W.2d at 171.

■ The purpose of the court's charge is two-fold: first, to inform the jury of the applicable law, and second, to guide the jury in applying the law to the case. *Id.* at 170. That is, the charge must allow the jury to determine the defendant's guilt or innocence in light of the evidence and the law. *Id.* Further, in the absence of evidence to the contrary, it is presumed that the jury understood and followed the court's charge. *Id.* at 172. With these principles in mind, we turn to the case at hand.

■ In the abstract paragraphs of the charge in this case, the trial court properly instructed the jury on the law of illegal investment and the law of parties. In the application paragraphs, the charge originally listed the names of both Abel Carrillo and Rogerro Goeva as principals, joined by the disjunctive "or." The State objected to the inclusion of Goeva's name and asked the trial court to strike both references to Goeva, stating that the evidence presented at trial had shown that Carrillo was the principal actor in the offense and Goeva acted only as a party. The defense objected to the State's motion to remove Goeva's name from the charge. As a result, the trial judge determined that the charge should read "Abel Carrillo and/or Rogerro Goeva." Defense counsel objected to the trial court's modification to the charge but failed to obtain a ruling. Thus, no error was preserved.

Without making further changes, the trial court submitted the charge to the jury with the following application paragraphs:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of May, 1993, in Tarrant County, Texas, the defendant, Ananias Cabrera, did then and there intentionally or knowingly finance or invest funds he knew or believed were intended to further the commission of the offense of aggravated possession of a controlled substance, namely: cocaine of more than two-hundred grams, including any adulterants or dilutants, you will find the defendant guilty of the offense of illegal investment as alleged in the indictment.

OR

If you find from the evidence beyond a reasonable doubt that on or about the 27th day of May, 1993, in Tarrant County, Texas, Abel Carrillo *and/or* Rogerro Goeva did then and there intentionally or knowingly finance or invest funds they knew or believed were intended to further the commission of the offense of aggravated possession of a controlled substance, namely: cocaine of more than two-hundred grams, including any adulterants or dilutants, and that Ananias Cabrera, acting with intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Abel Carrillo *and/or* Rogerro Goeva to commit the offense, if any, by his own actions or conduct during the commission of said offense, if any, then you will find the defendant, Ananias Cabrera, guilty of the offense of illegal investment as alleged in the indictment. [Emphasis added.]

■ The first step in our analysis is to determine whether this charge contained error. There was no evidence at trial, either direct or circumstantial, that Cabrera or Goeva intentionally or knowingly invested funds with the intent of committing the offense of aggravated possession of a controlled substance. As a result, we find that the trial court erred in issuing a charge that would permit the jury to convict Cabrera on theories not supported by the evidence. *See Watson v. State*, 693 S.W.2d 938, 940 (Tex. Crim.App.1985); *Savant v. State*, 544 S.W.2d 408, 409 (Tex.Crim.App.1976); *Bruton*, 921 S.W.2d at 537. Because we find error, we move to the second step in our analysis—the degree of harm necessary to mandate reversal. As noted above, a jury charge error properly preserved for our review must be reversed unless it is harmless. However, in the case before us, no error was preserved because Cabrera failed to obtain a ruling on

his objection to the charge. Accordingly, we may not reverse unless the charge error caused actual egregious harm to Cabrera. *See Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171; *Bruton*, 921 S.W.2d at 536.

In the case at bar, the two application paragraphs charged that Cabrera could be convicted under one of eight alternative theories:

1. Cabrera, as a principal, invested or financed the purchase of cocaine.

2. Carrillo and Goeva jointly invested or financed the purchase of cocaine, and Cabrera aided them jointly.

3. Carrillo and Goeva jointly invested or financed the purchase of cocaine, but Cabrera aided only Carrillo.

4. Carrillo and Goeva jointly invested or financed the purchase of cocaine, but Cabrera aided only Goeva.

5. Carrillo and not Goeva financed the cocaine purchase, and Cabrera aided only Carrillo.

6. Goeva and not Carrillo financed the cocaine purchase, and Cabrera aided only Goeva.

7. Carrillo and not Goeva financed the cocaine purchase, and Cabrera aided only Goeva.

8. Goeva and not Carrillo financed the cocaine purchase, and Cabrera aided only Carrillo.

In *Bruton*, this court determined that a jury charge that contained a legal theory not supported by the evidence did not egregiously harm the defendant. 921 S.W.2d at 536–37. In *Bruton*, the jury charge would have allowed the defendant to be convicted either as a principal or as a party to aggravated robbery, although there was no evidence at trial to establish that the defendant acted as a principal. *Id.* at 537. We held that the charge was erroneous, but found that no harm had accrued to the defendant. *Id.* at 538. The trial court had clearly instructed the jurors that before they could return a guilty verdict, they had to find that the defendant either acted as a principal *or* that he aided another person who was a principal. *Id.* at 537. Furthermore, in reviewing the State's jury argument, we noted that the

State proceeded only on the theory that the defendant was guilty as a party. *Id.* Accordingly, we held that the jury could not have been misled by the erroneous language in the charge. *Id.*

On the other hand, in *Hutch*, the court of criminal appeals held that a misstatement of the law that affected a defensive theory in the case constituted egregious error. *See Hutch*, 922 S.W.2d at 174. In *Hutch*, police officers pulled over a driver and his passenger (the defendant) for failing to wear seat belts. *See id.* at 169. The police officers saw the defendant lean over and drop cocaine on the floor of the car. *See id.* The defendant was subsequently charged with illegal possession of a controlled substance.

At trial, the defendant challenged the legality of the stop, testifying that he and the driver were wearing seat belts when the officers pulled them over. *See id.* The trial court's charge to the jury erroneously stated, "[I]f you find from the evidence ... the driver and front seat passenger were *not* wearing seat belts ... *then such stopping of the accused would be illegal* ...." *Id.* The court of criminal appeals determined that this instruction mistakenly authorized a stop if the defendant and the driver *were* wearing seat belts. *Id.* at 172. As a result, the *Hutch* court held that the jury could only have convicted the defendant by using illegally obtained evidence; that is, evidence obtained where the occupants of the car *were* wearing their seat belts at the time of the stop. *See id.* at 172. The court found that this error vitally affected the defendant's defensive theory and thus constituted egregious harm. *See id.*

We find Cabrera's case to be more akin to *Bruton* than *Hutch*. As we have already observed, the court's error occurred in the application paragraphs where the jury was instructed that it could return a guilty verdict based on legal theories not supported by the evidence. However, as evidenced in the fifth theory set out above, the trial court properly charged the jury that if it found Carrillo had engaged in illegal investment and Cabrera had acted intentionally to aid or encourage Carrillo in the offense, it must find

Cabrera guilty as a party to the offense. Second, in reviewing the entire jury charge, the trial court correctly set forth the elements of the offense and properly charged the jury on the law of parties. With regard to the evidence adduced at trial, Duff's testimony indicated that Carrillo was the principal actor and Goeva acted only as a party. Third, a review of the State's jury argument shows that the State proceeded solely on the theory that Cabrera was guilty as a party for encouraging Carrillo to commit the offense. Fourth, the defense did not contest the State's contentions that Carrillo acted as the principal and Goeva as a mere party. In fact, in the defense's closing argument, Cabrera's attorney referred to Carrillo as the cocaine dealer and to Goeva as a party who arranged the drug purchase. Based on all of these facts, we find that the jury was not misled by the extraneous legal theories contained in the charge. *See Watson,* 693 S.W.2d at 941 (jury was not misled by charge authorizing it to find defendant guilty if he "acted alone or as a party" because State proceeded solely on party theory). Given the evidence presented at trial, the State's emphasis on Carrillo's role as a principal and Goeva's and Cabrera's roles as parties, and in the absence of any apparent misstatement or confusion regarding the law of the offense or the law of parties, we find that the trial court's charge error did not cause egregious harm and did not deny Cabrera his right to a fair and impartial trial. We overrule Cabrera's fourth point.

The judgment of the trial court is affirmed.