11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Guadalupe Hernandez

Appellant

Vs.                   No.
11-00-00274-CR B Appeal from Nolan County

State of Texas

Appellee

 

The jury
convicted appellant of murder and assessed his punishment at confinement for
life and a fine of $10,000.  Appellant
appeals.  We affirm.








The
sufficiency of the evidence to support the conviction is not challenged.  Brigido Daniel (Danny) Alcala described the
murder.  Alcala testified that he was
asleep downstairs on a couch in the victim=s apartment.  He heard appellant
shouting, the sound of someone being slapped around, and the sound of the
victim saying AUgh@ about three times.  Alcala went
upstairs to the victim=s
bedroom and saw appellant on top of the victim beating her while he was having
sex with her.  Alcala stated that the
victim had blood all over her face.  The
victim was not moving except for making sounds.  Alcala went back downstairs because he was in total shock.  He then heard appellant coming down the
stairs.  Appellant went to the kitchen
and grabbed a knife, saying, AI will show that bitch.@  Appellant went back up the
stairs.  Then, Alcala stated that he heard
the shower running upstairs.  After the
water stopped running in the shower, Alcala went up the stairs to the
bathroom.  He saw appellant dragging the
victim back into the bedroom.  Alcala
testified that the victim was Atotally disfigured.@  Her face was Atotally@ swollen, she had bruises all over her face, and her eyes were swollen
shut.  The victim appeared to be
unconscious.  Alcala stated that
appellant did not see him.  Alcala hid
in the bathroom.  Blood was all over the
shower stall and on the bathtub, and bloody water was all over the floor.  Alcala went back downstairs.  He was about to leave, but went to the
kitchen because he could hear water running. 
Bloody water was dripping off the ceiling into the kitchen.  Alcala turned around and saw appellant
standing in the living room.  Appellant
had a Aglassy look in his eyes.@ 
Appellant told Alcala, AI f----d up (the victim).@  Alcala left the apartment.

Dr. Jill
Urban, a medical examiner for Dallas County, performed an autopsy on the victim=s body. 
Dr. Urban testified that the victim died as a result of blunt force
injuries with strangulation as a possible component.  The doctor stated that her findings were consistent with the
victim being struck about the head and body with a person=s fist.

Dr. Timothy
Slider, a forensic biologist, testified that he performed a D.N.A. analysis on
vaginal and anal swabs collected from the autopsy of the victim.  He stated that sperm was observed in both
the anal swab and vaginal swab.  Dr.
Slider testified that the D.N.A. profile from the anal and vaginal swabs was
consistent with the D.N.A. profile of appellant.

In his
first point of error, appellant urges that the trial court violated TEX. CODE
CRIM. PRO. ANN. art. 37.07, ' 3(a) (Vernon Supp. 2001) by failing to grant his motion for mistrial
following the introduction of an unadjudicated offense during the punishment
phase of the trial.  Jennifer Bentley
was called by the State at the punishment phase to testify about a prior bad
act committed against her by appellant. 
Bentley testified that, while she was at the park with some friends,
including appellant, she went to the bathroom. 
Bentley referred to appellant in her testimony as ALapone.@  The record reflects the
following:

Q:  Jennifer, who else came down to the bathroom
where you were?

 

A:  Lapone.

 

Q: I need
you to answer loud enough for the jury to hear.  Jennifer.

 

A: Lapone.

 

Q:
Lapone?  Jennifer, what did Lapone do
when he came to the bathroom where you were? 
Jennifer, what happened when Lapone came to the bathroom where you were?

 

A: He B He B He B

 

Q: What
did he do?

 

A: He B He B

 








Q: Jennifer, did he do
something to you?  Are you nodding AYes@?  Did he force you to have sex
with him?

 

[DEFENSE COUNSEL]: Your Honor,
we object to the leading nature of the question.

 

THE COURT: Sustained.

 

Q: Jennifer, what did he
do to you?

 

[DEFENSE COUNSEL]: Your
Honor, we object to that.  We ask you to
ask the jury to disregard it for any purpose.

 

THE COURT: Ladies and
gentlemen, you will disregard the previous question for any purpose.

 

[DEFENSE COUNSEL]: We
would ask for a mistrial.

 

THE COURT: Overruled.

 

THE WITNESS: He made me B He made me B He B

 

Q: Jennifer, can you tell
the Jury what he did?

 

A: He B He B

 

[PROSECUTOR]: Judge, may
I approach the witness?

 

THE COURT: Yes.

 

At
this point, the trial court, outside the presence of the jury, concluded that
the witness could not continue her testimony. 
The court then instructed the jury:

Ladies and gentlemen of
the Jury, the law provides that any witness tendered must be subject to cross
examination in order for their testimony to be considered by the Jury in their
deliberations.  The witness, Jennifer
Bentley, was tendered and testimony was tendered and I ruled that Mrs. Bentley
is unavailable for cross examination; therefore, all testimony, all that you
saw, all that you heard, is stricken from the record.  You are not to consider, allude to, or deliberate upon any of the
things you saw or heard during the tendering of Mrs. Bentley.

 

This is a finding of the
court, and order of the Court, and during which time you will begin your
deliberations that testimony, all that you saw and heard, legally does not
exist and can=t be alluded to, commented upon or considered
in your deliberations.

 








Appellant
argues that the prosecution was, effectively, allowed to introduce evidence of
a prior unadjudicated offense (sexual assault) which was not proved beyond a
reasonable doubt.  See Article 37.07,
section 3(a).

Appellant
made no objection to the trial court=s ruling regarding the witness nor did he move for a mistrial after
Bentley was excused by the court. 
Appellant objected that the prosecutor=s question to the witness, ADid he force you to have sex with him,@ was leading.  The trial court
sustained the Aleading@ objection and instructed the jury not to consider the Aquestion for any purpose.@  The
trial court overruled appellant=s motion for mistrial.

Appellant=s objection at trial was that the question
was leading.  On appeal, appellant urges
that the trial court erred in permitting the introduction of highly prejudicial
evidence regarding unadjudicated offenses during the punishment phase in
violation of AARTICLE 37.07 SECTION 3(a) OF THE TEXAS CODE
OF CRIMINAL PROCEDURE.@  Appellant=s trial objection does not comport with the issue raised on
appeal.  Appellant has not preserved
anything for appellate review.  Knox v.
State, 934 S.W.2d 678 (Tex.Cr.App.1996); see also Wooden v. State, 929 S.W.2d
77, 79 (Tex.App. - El Paso 1996, no pet=n).  Appellant=s first point of error is overruled.

Appellant
urges in his second point that the trial court erred in failing to charge the
jury on the burden of proof regarding extraneous-offense and bad-act evidence
during the punishment phase.  Appellant
cites Huizar v. State, 12 S.W.3d 479 (Tex.Cr.App.2000), for the rule that the
trial court must sua sponte instruct the jury on the burden of proof for
evidence of extraneous offenses or bad acts admitted at punishment.  Under this point, appellant refers to the
alleged rape of Jennifer Bentley by appellant. 
We have held that there was no evidence of such rape.  Therefore, Huizar is not applicable.

We will,
nevertheless, for purposes of this opinion, assume that error was committed
and  will analyze the assumed error
(failure to give the proper burden of proof instruction) under the standard set
out in Almanza v. State, 686 S.W.2d 157, 171 (Tex.Cr.App.1985).  See Huizar v. State, supra at 484-85.  To constitute reversible error, a defendant
must have suffered actual Aegregious=
harm.  Arline v. State, 721 S.W.2d 348,
351-52 (Tex.Cr.App.1986).  The actual
degree of harm must be:

[A]ssayed in light of the entire jury charge,
the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.

 

Almanza v. State, supra
at 171.








The
evidence shows that appellant committed a very brutal murder.  The State introduced evidence of prior
convictions by way of judgments.  The
judgments revealed that appellant had been to the penitentiary.  The trial court carefully instructed the
jury that it was not to consider, allude to, or deliberate upon any of the
things that it saw or heard during the tendering of Bentley.  The prosecutor did not, in her argument to
the jury, in any way refer to Bentley. 
We hold that the failure to instruct the jury on the reasonable-doubt
standard during the punishment phase of trial was harmless under Almanza.  The second point of error is overruled.

In the
third point of error, appellant asserts that the trial court abused its
discretion in admitting an autopsy photograph of the victim.  The State contends that the massive head
injuries sustained by the victim were significant to the cause of death.  The autopsy photograph depicted the victim=s skull, after the scalp had been pealed
away, showing subscalpular hemorrhaging. 
The medical examiner testified that there was a significant injury that
was not visible in any of the other photographs admitted into evidence.  The medical examiner testified further that
these injuries were significant to the cause of death.  The autopsy photograph depicted, in the only
way possible, the severe head trauma suffered by the victim.  This was an issue before the jury and was
significant to the cause of death.  The
trial court did not abuse its discretion in permitting the autopsy photograph to
be introduced into evidence.  Harris v.
State, 624 S.W.2d 418 (Tex.App. - Eastland 1981), aff=d, 661 S.W.2d 106 (Tex.Cr.App.1983). 
The third point of error is overruled.

The
judgment of the trial court is affirmed.

 

AUSTIN
McCLOUD

SENIOR
JUSTICE

 

October 25, 2001

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

McCall, J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.