NO. 07-08-0512-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 13, 2010
                                       ______________________________

FREDERICK DEWAYNE MARSH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 57,785-B; HONORABLE JOHN BOARD, JUDGE
_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Frederick Dewayne Marsh, was convicted of assault causing bodily injury
to a family member,


 enhanced by one prior felony conviction. He was subsequently
sentenced to serve 15 years confinement in the Institutional Division of the Texas
Department of Criminal Justice (ID-TDCJ) and pay a fine of $10,000. Via a single issue,
appellant contends that the trial court committed egregious error when it charged the jury
on self defense without inclusion of a paragraph concerning appellant’s right to self
defense against multiple assailants. We will affirm the judgment of the trial court.
Factual and Procedural Background
          On April 13, 2008, Amarillo Police were dispatched to 2502 Oak in reference to an
ongoing fight. This is the residence of the complaining witness, Cynthia Ann Adams. 
Adams and appellant had previously had a romantic relationship that included appellant
living with Adams and her daughter. The testimony at trial indicated that at the time of the
assault appellant was not residing at the residence. Upon arriving at the residence officers
found appellant in the middle of the street a short distance from the house. The officers
stopped and talked to appellant and learned that he was coming from the location of the
fight. They placed him in the back seat of the police car and went to the residence. One
officer, Dorris, stayed with appellant at the car while the other officer, Uselding, went to the
door. 
          When Uselding knocked on the door, he was met by Torrie Sage Coleman, Adams’s
daughter. According to Uselding, Torrie did not look as if she had been in an assault but
indicated her mother, Adams, had been assaulted and was in the kitchen. However, Torrie
explained that before Adams could see Uselding, she needed to put her clothes on as they
had been torn off of her during the assault. When Uselding first saw Adams, she was
hysterical and crying. Uselding proceeded to take pictures of Adams’s physical injuries and
took a statement. Uselding did find a gun laying on the kitchen floor. Torrie told the officer
that she had retrieved the gun but had not used it. Torrie gave a statement to Uselding
about the events of the assault.
          While Uselding was in the house with Adams and her daughter, Dorris was in the
patrol car with appellant. Dorris observed that appellant had a gash on his forehead and
appellant advised he had been hit in the head with a beer bottle. During the period in the
car, appellant did not advise Dorris of any other injuries he might have suffered in the fight. 
Dorris offered appellant the opportunity to make a statement, however appellant declined
to do so. Ultimately, a decision to arrest appellant for the assault of Adams was made. 
Appellant was transported to the hospital and eventually to the jail.
          At the trial, Adams testified that sometime during the early morning hours of April
13th she had been at a club named Steppers. While in the club, Adams saw appellant and
attempted to leave without speaking to him. However, appellant followed Adams to her car
and, uninvited, jumped into the passenger seat. Adams asked appellant several times to
leave the car but he refused to do so. Adams decided to drive to her home because her
daughter was there and the daughter could call the police. When Adams arrived at the
house, appellant followed her in. Again, Adams testified that she asked him to leave and
he refused. The argument about appellant’s presence in the house escalated to a shouting
match that woke up Torrie, who had been asleep on the couch. Torrie exited the living
room and went to the kitchen. At that time, Adams received a call on her cell phone, which
appellant took from her and answered. The call was from a male and this appeared to
anger appellant. After taking the phone call, appellant began striking Adams with his fist. 
          Torrie testified that it was when she heard her mother being struck by appellant that
she went back to the living room. Upon seeing appellant continue to strike her mother,
Torrie attempted to pull appellant off and ended up jumping on his back striking him. 
Appellant then struck her in the stomach. When Adams saw appellant striking Torrie, she
picked up a beer bottle and hit him in the forehead with it. 
          Appellant then returned his attention to Adams and began striking her again with a
closed fist. Subsequently, Adams stated that appellant drug her outside of the house onto
the lawn and in the process most of her clothing was ripped off. Adams stated that while
outside, appellant continued to punch her and kick her. According to Adams and Torrie,
appellant ceased the assault when a neighbor’s outside light came on. At that time,
appellant got up and began going down the street to the location where the responding
officers first found him.
          Appellant testified in his own behalf and gave a far different version of the facts. 
According to appellant, he had been with Adams earlier in the day at his mother’s house
and, in fact, had been intimate with her at that time. Further, appellant testified that he was
to have been with her again in the evening to take her and another daughter of Adams to
eat pizza. However, this did not occur because appellant was delayed and Adams became
angry with him over the delay. Appellant contended that Adams was very jealous and
suspected that the delay was because appellant was with another woman. He testified
that, earlier in the evening, he began receiving phone calls and text messages from Adams
on his cell phone. Appellant said that he finally sent a text to Adams asking her to pick him
up at Steppers. Further, appellant stated that Adams came to the club and they decided
to leave together. Adams went to her car and pulled up in front of the street in front of the
club and waited for appellant. Appellant got in the car and Adams left heading toward her
home. Appellant testified that almost immediately Adams started arguing with him
accusing him of being with other women all night. It was after this accusation that
appellant testified that Adams picked up a beer bottle and struck him in the forehead with
it. Appellant told the jury that the story of him being struck with the beer bottle at the house
was a lie. 
          After arriving at Adams’s home, appellant testified that he was very woozy and
Adams led him into the house. Upon going into the house, appellant stated that Torrie was
present and awake in the living room and he explained to her that Adams had hit him in
the head with a beer bottle. According to appellant, Torrie then left the living room. It was
then that Adams received the phone call from the male caller. Appellant admitted that,
after the phone call, he called Adams an “old slut.” It was at this time when Adams began
trying to punch appellant in the face and on the head. Appellant testified that he was trying
to defend himself and leave the house. According to appellant, Adams and Torrie were 
between him and the front door. Again, according to appellant’s version of the facts, this
is when they both approached him and began slapping and hitting him. Appellant denied
dragging Adams into the front yard or purposefully ripping off any of her clothing. Appellant
also told the jury that he received injuries to the back of his head in addition to the gash on
the forehead from the beer bottle.
          At the conclusion of the evidence, the trial court presented a proposed court’s
charge to the attorneys. The proposed charge contained a charge on self defense as to
the actions of Adams only. However, absent from the proposed charge was any self
defense charge relating to multiple assailants. Appellant did not object to the proposed
charge nor did he present a proposed charge covering self defense from multiple
assailants.
          The jury convicted appellant and, at the punishment hearing, appellant pleaded
“True” to the enhancement paragraph. The jury subsequently sentenced appellant to
confinement in ID-TDCJ for 15 years and assessed a fine of $10,000. This appeal
followed.
          Appellant contends that the evidence raised the issue of self defense from multiple
assailants. Further, appellant contends that the failure of the trial court to give that charge
resulted in egregious harm. Disagreeing with appellant, we will affirm the judgment.
Standard of Review
          Initially we observe that a claim of error in the court’s charge involves a two step
process. See Abdnor v. State, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). First, we must
determine whether or not error occurred, and then whether or not sufficient harm resulted
from the alleged error to require reversal. Id. at 731-32. In the present situation, the State
is not seriously contesting whether the state of the evidence required submission of the
multiple assailant self defense charge. We will therefore, for purposes of this opinion,
assume the evidence supported the requirement for the charge in question. Having 
decided to address the issue of harm, we further note that appellant has conceded that he
did not object to the failure of the trial court to include a paragraph in the charge relating
to self defense from multiple assailants. That being so, we review this matter under the
standard of review set forth in Almanza v. State to determine whether or not the failure of
the trial court to include the unrequested charge resulted in appellant suffering egregious
harm. See Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); see also Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 2006) (standard for appellate review when
defendant disregarded requirements, including objection to the charge). Egregious harm
is that which deprives appellant of a valuable right or that upon which his defensive theory
was “vitally affected.” See Bluitt v. State, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004). 
Egregious harm is a difficult standard and must be proved on a case by case basis. See 
Ellison v. State, 86 S.W.3d 226, 277 (Tex.Crim.App. 2002). When reviewing a record to
determine egregious harm, appellate courts are instructed to review four factors: 1) the
entire jury charge; 2) the state of the evidence, including the contested issues and weight
of probative evidence; 3) the argument of counsel; and 4) any other relevant information
revealed by the record of the trial as a whole. Almanza, 686 S.W.2d at 171.
Analysis
          When we begin by reviewing the charge, we find that the trial court charged the jury
regarding the right of appellant to self defense in light of the action of Adams. Id. 
Specifically the trial court said:
but you further find, or have a reasonable doubt thereof, that the defendant
reasonably believed as viewed from his standpoint alone that force when and
to the degree used, if it was, was immediately necessary to protect himself
against the use or attempted use of unlawful force by the said Cynthia Ann
Adams, and that the use of force, if any, by the said defendant was not in
response to verbal provocation alone, then you will acquit the defendant and
say by your verdict “not guilty.”
 
That charge standing alone would seem to militate toward a finding of egregious harm. 
There is nothing else contained within the court’s charge that might otherwise direct the
jury’s attention to the actions of Torrie. See Mata v.State, 939 S.W.2d 719, 723-24
(Tex.App.–Waco, 1997, no pet.). However, this is not the only matter we are instructed to
look at and review. There is also the state of the evidence. Almanza, 686 S.W.2d at 171.
          A complete review of the evidence leads to the conclusion that, regardless of who
was considered to be the instigator of the assault, Torrie did not become involved until after
the initial blows had been struck. Under both the scenarios set forth in the competing
evidence, Torrie was described as being in another room when the assault commenced. 
This becomes important only from the standpoint that Torrie was clearly not coming at
appellant when the initial decision to defend himself was made. All of this becomes
significantly more important because the review of the total record reveals that the only
truly contested issue was who instigated the assault. 
          Further, regarding the weight of probative evidence, appellant testified to receiving
numerous blows to his head, face, and neck area and the only proof of such injuries were
the two pictures introduced that showed the gash left by the beer bottle. However, there
was no medical testimony offered in support of appellant’s testimony that he received
additional injuries as a result of Adams’s assault on him. In direct contrast to this were the
pictures of Adams that depicted a woman who had suffered numerous injuries to her head,
face, arms, and body. The sheer magnitude of the injuries suffered by Adams versus
appellant is something that the jury was entitled and, in fact, did take into consideration in
resolving the conflicting evidence. Both of these evidentiary considerations strongly
suggest that appellant did not suffer egregious harm by the trial court’s charge lacking a
self-defense instruction against multiple assailants.
          Next we must review the argument of counsel. Id. In reviewing the argument of
counsel, both State and appellant’s trial counsel, it becomes even more clear that the
primary issue at trial was whether appellant or Adams was the instigator of the assault. 
Torrie is mentioned in passing by the State and only to the issue of her testimony
corroborating that of Adams. During appellant’s trial counsel’s argument, most of the time
is spent explaining why Adams’s testimony is inconsistent with the State’s theory of the
case and why the testimony presented by appellant regarding the facts leading up to the
assault are more believable. In fact, appellant’s trial counsel mentions Torrie by name but
one time in the final argument and that was not in connection with her being an assailant
of appellant. The argument of counsel, both State and appellant, weigh against a finding
of egregious harm. 
          Finally, there is the consideration of any other relevant information revealed by the
record. Nothing else in this record touches upon any theory or fact that would lead this
court to believe that appellant suffered any harm, much less egregious harm, from a failure
by the trial court to submit a self defense issue regarding multiple assailants. See Arline
v. State, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986). 
          In light of the Almanza factors, we are unable to say that appellant has suffered 
egregious harm. Almanza, 686 S.W.2d at 171. We overrule appellant’s issue. 
Conclusion
          Having overruled appellant’s sole issue, we affirm the trial court. 
 
                                                                           Mackey K. Hancock

                                                                                    Justice









Do not publish.