NO. 07-08-0512-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 13, 2010
_____

FREDERICK DEWAYNE MARSH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 57,785-B; HONORABLE JOHN BOARD, JUDGE
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Frederick Dewayne Marsh, was convicted of assault causing bodily injury to a family member,[1] enhanced by one prior felony conviction. He was subsequently sentenced to serve 15 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) and pay a fine of $10,000. Via a single issue, appellant contends that the trial court committed egregious error when it charged the jury

_____

[1]See TEX. PENAL CODE ANN. § 22.01(b)(2) (Vernon Supp. 2009).

on self defense without inclusion of a paragraph concerning appellant's right to self defense against multiple assailants. We will affirm the judgment of the trial court.

## Factual and Procedural Background

On April 13, 2008, Amarillo Police were dispatched to 2502 Oak in reference to an ongoing fight. This is the residence of the complaining witness, Cynthia Ann Adams. Adams and appellant had previously had a romantic relationship that included appellant living with Adams and her daughter. The testimony at trial indicated that at the time of the assault appellant was not residing at the residence. Upon arriving at the residence officers found appellant in the middle of the street a short distance from the house. The officers stopped and talked to appellant and learned that he was coming from the location of the fight. They placed him in the back seat of the police car and went to the residence. One officer, Dorris, stayed with appellant at the car while the other officer, Uselding, went to the door.

When Uselding knocked on the door, he was met by Torrie Sage Coleman, Adams's daughter. According to Uselding, Torrie did not look as if she had been in an assault but indicated her mother, Adams, had been assaulted and was in the kitchen. However, Torrie explained that before Adams could see Uselding, she needed to put her clothes on as they had been torn off of her during the assault. When Uselding first saw Adams, she was hysterical and crying. Uselding proceeded to take pictures of Adams's physical injuries and took a statement. Uselding did find a gun laying on the kitchen floor. Torrie told the officer

2

that she had retrieved the gun but had not used it. Torrie gave a statement to Uselding about the events of the assault.

While Uselding was in the house with Adams and her daughter, Dorris was in the patrol car with appellant. Dorris observed that appellant had a gash on his forehead and appellant advised he had been hit in the head with a beer bottle. During the period in the car, appellant did not advise Dorris of any other injuries he might have suffered in the fight. Dorris offered appellant the opportunity to make a statement, however appellant declined to do so. Ultimately, a decision to arrest appellant for the assault of Adams was made. Appellant was transported to the hospital and eventually to the jail.

At the trial, Adams testified that sometime during the early morning hours of April 13th she had been at a club named Steppers. While in the club, Adams saw appellant and attempted to leave without speaking to him. However, appellant followed Adams to her car and, uninvited, jumped into the passenger seat. Adams asked appellant several times to leave the car but he refused to do so. Adams decided to drive to her home because her daughter was there and the daughter could call the police. When Adams arrived at the house, appellant followed her in. Again, Adams testified that she asked him to leave and he refused. The argument about appellant's presence in the house escalated to a shouting match that woke up Torrie, who had been asleep on the couch. Torrie exited the living room and went to the kitchen. At that time, Adams received a call on her cell phone, which appellant took from her and answered. The call was from a male and this appeared to anger appellant. After taking the phone call, appellant began striking Adams with his fist.

3

Torrie testified that it was when she heard her mother being struck by appellant that she went back to the living room. Upon seeing appellant continue to strike her mother, Torrie attempted to pull appellant off and ended up jumping on his back striking him. Appellant then struck her in the stomach. When Adams saw appellant striking Torrie, she picked up a beer bottle and hit him in the forehead with it.

Appellant then returned his attention to Adams and began striking her again with a closed fist. Subsequently, Adams stated that appellant drug her outside of the house onto the lawn and in the process most of her clothing was ripped off. Adams stated that while outside, appellant continued to punch her and kick her. According to Adams and Torrie, appellant ceased the assault when a neighbor's outside light came on. At that time, appellant got up and began going down the street to the location where the responding officers first found him.

Appellant testified in his own behalf and gave a far different version of the facts. According to appellant, he had been with Adams earlier in the day at his mother's house and, in fact, had been intimate with her at that time. Further, appellant testified that he was to have been with her again in the evening to take her and another daughter of Adams to eat pizza. However, this did not occur because appellant was delayed and Adams became angry with him over the delay. Appellant contended that Adams was very jealous and suspected that the delay was because appellant was with another woman. He testified that, earlier in the evening, he began receiving phone calls and text messages from Adams on his cell phone. Appellant said that he finally sent a text to Adams asking her to pick him up at Steppers. Further, appellant stated that Adams came to the club and they decided

4

to leave together. Adams went to her car and pulled up in front of the street in front of the club and waited for appellant. Appellant got in the car and Adams left heading toward her home. Appellant testified that almost immediately Adams started arguing with him accusing him of being with other women all night. It was after this accusation that appellant testified that Adams picked up a beer bottle and struck him in the forehead with it. Appellant told the jury that the story of him being struck with the beer bottle at the house was a lie.

After arriving at Adams's home, appellant testified that he was very woozy and Adams led him into the house. Upon going into the house, appellant stated that Torrie was present and awake in the living room and he explained to her that Adams had hit him in the head with a beer bottle. According to appellant, Torrie then left the living room. It was then that Adams received the phone call from the male caller. Appellant admitted that, after the phone call, he called Adams an "old slut." It was at this time when Adams began trying to punch appellant in the face and on the head. Appellant testified that he was trying to defend himself and leave the house. According to appellant, Adams and Torrie were between him and the front door. Again, according to appellant's version of the facts, this is when they both approached him and began slapping and hitting him. Appellant denied dragging Adams into the front yard or purposefully ripping off any of her clothing. Appellant also told the jury that he received injuries to the back of his head in addition to the gash on the forehead from the beer bottle.

At the conclusion of the evidence, the trial court presented a proposed court's charge to the attorneys. The proposed charge contained a charge on self defense as to

5

the actions of Adams only. However, absent from the proposed charge was any self defense charge relating to multiple assailants. Appellant did not object to the proposed charge nor did he present a proposed charge covering self defense from multiple assailants.

The jury convicted appellant and, at the punishment hearing, appellant pleaded "True" to the enhancement paragraph. The jury subsequently sentenced appellant to confinement in ID-TDCJ for 15 years and assessed a fine of $10,000. This appeal followed.

Appellant contends that the evidence raised the issue of self defense from multiple assailants. Further, appellant contends that the failure of the trial court to give that charge resulted in egregious harm. Disagreeing with appellant, we will affirm the judgment.

Standard of Review

Initially we observe that a claim of error in the court's charge involves a two step process. See Abdnor v. State, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). First, we must determine whether or not error occurred, and then whether or not sufficient harm resulted from the alleged error to require reversal. Id. at 731-32. In the present situation, the State is not seriously contesting whether the state of the evidence required submission of the multiple assailant self defense charge. We will therefore, for purposes of this opinion, assume the evidence supported the requirement for the charge in question. Having decided to address the issue of harm, we further note that appellant has conceded that he did not object to the failure of the trial court to include a paragraph in the charge relating

6

to self defense from multiple assailants.  That being so, we review this matter under the standard of review set forth in Almanza v. State to determine whether or not the failure of the trial court to include the unrequested charge resulted in appellant suffering egregious harm.  See Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); see also TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006) (standard for appellate review when defendant disregarded requirements, including objection to the charge).  Egregious harm is that which deprives appellant of a valuable right or that upon which his defensive theory was "vitally affected."  See Bluitt v. State, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004). Egregious harm is a difficult standard and must be proved on a case by case basis.  See Ellison v. State, 86 S.W.3d 226, 277 (Tex.Crim.App. 2002).  When reviewing a record to determine egregious harm, appellate courts are instructed to review four factors: 1) the entire jury charge; 2) the state of the evidence, including the contested issues and weight of probative evidence; 3) the argument of counsel; and 4) any other relevant information revealed by the record of the trial as a whole.  Almanza, 686 S.W.2d at 171.

Analysis

When we begin by reviewing the charge, we find that the trial court charged the jury regarding the right of appellant to self defense in light of the action of Adams.  Id. Specifically the trial court said:

> but you further find, or have a reasonable doubt thereof, that the defendant reasonably believed as viewed from his standpoint alone that force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful force by the said Cynthia Ann Adams, and that the use of force, if any, by the said defendant was not in

7

response to verbal provocation alone, then you will acquit the defendant and say by your verdict "not guilty."

That charge standing alone would seem to militate toward a finding of egregious harm. There is nothing else contained within the court's charge that might otherwise direct the jury's attention to the actions of Torrie. See Mata v.State, 939 S.W.2d 719, 723-24 (Tex.App.–Waco, 1997, no pet.). However, this is not the only matter we are instructed to look at and review. There is also the state of the evidence. Almanza, 686 S.W.2d at 171.

A complete review of the evidence leads to the conclusion that, regardless of who was considered to be the instigator of the assault, Torrie did not become involved until after the initial blows had been struck. Under both the scenarios set forth in the competing evidence, Torrie was described as being in another room when the assault commenced. This becomes important only from the standpoint that Torrie was clearly not coming at appellant when the initial decision to defend himself was made. All of this becomes significantly more important because the review of the total record reveals that the only truly contested issue was who instigated the assault.

Further, regarding the weight of probative evidence, appellant testified to receiving numerous blows to his head, face, and neck area and the only proof of such injuries were the two pictures introduced that showed the gash left by the beer bottle. However, there was no medical testimony offered in support of appellant's testimony that he received additional injuries as a result of Adams's assault on him. In direct contrast to this were the pictures of Adams that depicted a woman who had suffered numerous injuries to her head, face, arms, and body. The sheer magnitude of the injuries suffered by Adams versus

8

appellant is something that the jury was entitled and, in fact, did take into consideration in resolving the conflicting evidence. Both of these evidentiary considerations strongly suggest that appellant did not suffer egregious harm by the trial court's charge lacking a self-defense instruction against multiple assailants.

Next we must review the argument of counsel. Id. In reviewing the argument of counsel, both State and appellant's trial counsel, it becomes even more clear that the primary issue at trial was whether appellant or Adams was the instigator of the assault. Torrie is mentioned in passing by the State and only to the issue of her testimony corroborating that of Adams. During appellant's trial counsel's argument, most of the time is spent explaining why Adams's testimony is inconsistent with the State's theory of the case and why the testimony presented by appellant regarding the facts leading up to the assault are more believable. In fact, appellant's trial counsel mentions Torrie by name but one time in the final argument and that was not in connection with her being an assailant of appellant. The argument of counsel, both State and appellant, weigh against a finding of egregious harm.

Finally, there is the consideration of any other relevant information revealed by the record. Nothing else in this record touches upon any theory or fact that would lead this court to believe that appellant suffered any harm, much less egregious harm, from a failure by the trial court to submit a self defense issue regarding multiple assailants. See Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986).

In light of the <u>Almanza</u> factors, we are unable to say that appellant has suffered egregious harm. <u>Almanza</u>, 686 S.W.2d at 171. We overrule appellant's issue.

Conclusion

Having overruled appellant's sole issue, we affirm the trial court.


Mackey K. Hancock
Justice


Do not publish.