

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00201-CR

**YALANDA RENEE LIND,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-1147-C2**

## MEMORANDUM  OPINION

The jury convicted Yalanda Lind of the offense of capital murder and the offense of aggravated assault.   The trial court assessed punishment at life in prison without the possibility for parole for the capital murder conviction, and the trial court assessed punishment at twenty years confinement for the aggravated assault conviction.   We affirm.

## Sufficiency of the Evidence

In the first issue, Lind complains that the evidence is insufficient to support her conviction for capital murder. In the second issue, Lind argues that because there was no evidence she attempted to rob the victims, she was only guilty of murder. In the fourth issue, Lind complains that the evidence is insufficient to support her conviction for aggravated assault. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd*, 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence

are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Yalanda Lind lived with her mother, Rebecca Leonard, and her mother's boyfriend, Jerry Patterson. Rebecca and Jerry told Yalanda that she needed to move out of their home by November 1, 2008. Yalanda was in a relationship with Jeremy Lowrey during the time she lived with her mother. Yalanda testified that the she ended the relationship with Jeremy around September 27, 2008.

During the early morning hours of October 13, 2008, Rebecca and Jerry were asleep in their bed when Rebecca got up from their bed and told Jerry she was going to check on Yalanda. Jerry testified that Rebecca walked toward the hallway and called, "Yalanda." Jerry stated that when Rebecca got to Yalanda's room, Rebecca screamed "Yalanda," as if something scared her. Jerry said that Rebecca then screamed a "death scream." When Jerry got to Rebecca, she had been stabbed in her lungs and was lying on the floor. Jerry did not see Yalanda with her mother.

Jerry testified that he was then hit from behind, and it knocked him into the wall. A man with a mask came and stabbed Jerry in the chest. Jerry struggled with the man and received multiple stab wounds. Jerry testified that Yalanda never came to help him during the attack. The man eventually left Jerry, but returned when Jerry tried to go for

the knife. Jerry was stabbed again, and he told the man "don't kill me." The man again left Jerry bleeding heavily, and Jerry decided to try to leave the house.

Jerry testified that he went through the hallway to go out the door, and he saw Yalanda in the kitchen sitting in front of the stove talking to the man who attacked him. Jerry said that the man asked Yalanda, "where is the money" and Yalanda responded "there's not any money." Jerry escaped to a neighbor's house, and asked his neighbor to call 9-1-1. Jerry had numerous stab wounds, and was in the hospital for several weeks to recover from his injuries.

When officers arrived at the scene, Yalanda told them that Jeremy was the attacker, and she gave a description of Jeremy. Officers were able to locate Jeremy and take him into custody. Officers who arrived at the scene testified that there was blood everywhere in the residence. Yalanda led the officers to the hallway where Rebecca was lying on the floor. Sergeant Jason Lundquist performed CPR on Rebecca until medical personal arrived at the scene, but Rebecca died from her injuries. Officers testified that there was no sign of forced entry at the residence and that Yalanda did not have any visible injuries.

Yalanda testified at trial that on the night of October 12, 2008, she was asleep in her room, and she heard the dog bark. Yalanda woke up and saw a person at the end of her bed. Yalanda said that the person jumped on top of her and put a cushion over her face. Yalanda struggled with the person, and threw him off of her. Yalanda said that the attacker was wearing a mask at that time. Yalanda continued to fight and struggle with the attacker. Yalanda screamed for help, and she heard her mother call her name. The attacker got off of Yalanda and went to Rebecca. Yalanda was able to get up, and she saw

the attacker on top of her mother. Yalanda screamed for Jerry to come help. The attacker then got off of Rebecca and went in Jerry and Rebecca's bedroom.

Yalanda looked into the bedroom and saw the person attacking Jerry. She jumped on the attacker's back and hit him, but she could not budge the attacker. She left the bedroom to go get a phone to call 9-1-1 for help. Yalanda testified that she called 9-1-1 from the kitchen. The attacker then came into the kitchen and slammed Yalanda into the counter and kicked her. Yalanda grabbed the mask and saw that Jeremy was the attacker. Yalanda stated that Jeremy then hit her head into the stove. Jerry then came through bleeding heavily. Jerry was trying to get out of the door, and Jeremy chased him. Yalanda testified that Jeremy screamed "where is the money" and Jerry said, "we ain't got none." Yalanda then began calmly telling Jeremy they did not have any money in an effort to distract him so that Jerry could leave. Jerry was able to leave the house, and Jeremy then ran out of the house. Yalanda went to her mother who was bleeding heavily and not responding. When the police arrived, Yalanda told them that Jeremy was the attacker.

As alleged in the indictment, a person commits the offense of capital murder if the person commits murder as defined under Section 19.02(b)(1) and the person intentionally commits the murder in the course of committing or attempting to commit … robbery. TEX. PENAL CODE ANN. 19.03 (a) (2) (West Supp. 2014). A person commits the offense of robbery if in the course of committing theft, and with the intent to obtain or maintain control of the property, a defendant knowingly or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent

bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (West 2011). A person commits the offense of aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. 22.02 (a) (2) (West 2011).

The charge instructed the jury on the law of parties.

Section 7.01 of the Texas Penal Code provides:

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

(b) Each party to an offense may be charged with commission of the offense.

(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02 (a) (West 2011).

In determining whether an individual is a party to an offense, the court may look to events occurring before, during, and after the commission of the offense, and may rely

on actions of the defendant that show an understanding and common design to do the prohibited act. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App.1985). The jury is permitted to draw multiple reasonable inferences from the evidence presented as long as each is supported by the record. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Jerry testified that the doors and windows were locked on the night of the murder and that neither he nor Rebecca unlocked the doors or windows that night. There was testimony from police officers that there was no evidence of a forced entry into the home. The jury could reasonably infer that Yalanda allowed Jeremy into the house on the night of the murder.

Jerry testified that after he and Rebecca were attacked, Yalanda and Jeremy were calmly discussing money in the kitchen. Jerry did not see any altercation between Jeremy and Rebecca. There was also evidence that Yalanda did not suffer any visible injuries on the night of the offense.

Debra McCall testified that Jerry is her husband's uncle. They received a call after the offense to come to the hospital. Debra testified that she saw Yalanda at the hospital on October 13. Yalanda told Debra that Jeremy had committed the offenses. Yalanda further told Debra, "he killed the wrong one." Debra stated that Yalanda did not seem worried about her mother, but rather was more concerned about items in the house and the worth of those items. Debra testified that she assisted in cleaning the house after the offenses. Debra and Charlene Kirby, the executor of Rebecca's will, found cash hidden in the house.

There was evidence that Yalanda owed Rebecca money. Rebecca kept a ledger recording the amount of money owed to her by Yalanda. Jerry and Rebecca told Yalanda that she would have to move out of the house, and Yalanda testified that she did not have enough money to be able to pay her bills.

The evidence shows, and Yalanda concedes in her brief, that Jeremy had intent to commit theft, and that he caused bodily injury to another. There was testimony that the house was locked and there were no signs of forced entry. Jerry testified that Yalanda was calm when she was talking to Jeremy after the attack and that she was not fighting him or trying to escape. In a circumstantial evidence case, it is unnecessary for every fact to point directly and independently to the guilt of the accused; rather, it is enough if the finding of guilt is warranted by the cumulative force of all the incriminating evidence. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Viewing all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found that Yalanda acted with intent to promote or assist the commission of the offenses and aided in committing the offenses of capital murder and aggravated assault. We overrule Yalanda's first and fourth issues on appeal. Because of our disposition of the first issue, we need not address Yalanda's second issue. TEX.R.APP. 47.1.

## Jury Charge

In the third issue, Yalanda argues that the trial court erred "in submitting a party application paragraph in the capital murder portion of the jury charge that did not require a finding that [she] intended to assist in both offenses – murder and robbery – thereby allowing for a nonunanimous verdict." Appellate review of alleged jury-charge

error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, the court must determine whether error actually exists in the charge. If error is found, the court must then evaluate whether sufficient harm resulted from the error to require reversal. *Id*. at 731-32. If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id*. To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Yalanda did not object to the application paragraph of the charge.

The application paragraph in the capital murder portion of the charge instructed the jury as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Yalanda Renee Lind, on or about the 13th day of October, 2008, in the County of Mclennan and State of Texas, as alleged in Count I of the indictment, did then and there intentionally cause the death of an individual, namely, Rebecca Leonard, by stabbing and cutting Rebecca Leonard with a knife, and the Defendant was then and there in the course of committing or attempting to commit the offense of Robbery of Rebecca Leonard or Jerry Patterson, then you will find the Defendant guilty of the offense of Capital Murder, as alleged in Count I of the indictment and so say by your verdict;

> Or, if you believe from the evidence beyond a reasonable doubt that someone other than Yalanda Renee Lind, on or about the 13th day of October, 2008, in the County of Mclennan and State of Texas; did then and

there intentionally cause the death of an individual, namely, Rebecca Leonard, by stabbing and cutting Rebecca Leonard with a knife, and someone other than the Defendant was then and there in the course of committing or attempting to commit the offense of Robbery of Rebecca Leonard or Jerry Patterson, and you further find and believe beyond a reasonable doubt that Yalanda Renee Lind, acting with intent to promote or assist another person to commit said offense, solicited, encouraged, directed, aided, or attempted to aid another person to commit said offense, then you will find the Defendant guilty of the offense of Capital Murder, as alleged in Count I of the indictment in the same manner as if you found that the offense was committed by the Defendant's own conduct, and so say by your verdict.

In *Holford v. State*, 177 S.W.3d 454, (Tex.App.-Houston [1 Dist.] 2005, pet. ref'd), the court considered similar language used in a charge on the law of parties in a capital murder case. In *Holford*, the charge also included language instructing the jury that if they found someone other than the defendant did then and there unlawfully, while in the course of committing or attempting to commit the robbery of the victim, intentionally cause the death of the victim by cutting the victim with a deadly weapon, namely, a knife, and that the defendant, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid another person to commit the offense, then they will find the defendant guilty of capital murder. *Holford v. State*, 177 S.W.3d at 460.

The defendant in *Holford* argued that the charge permitted the jury to convict him as a party to capital murder if he intended to aid in only one offense rather than in both offenses. *Holford v. State*, 177 S.W.3d at 460. In *Holford*, the Court noted that the charge describes the capital murder as necessarily occurring "while in the course of committing

or attempting to commit the robbery."  *Holford v. State*, 177 S.W.3d at 461.  The Court did not find that the charge was erroneous.  We agree.  We overrule Yalanda's third issue.

**Conclusion**

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 23, 2015
Do not publish
[CRPM]

