

## NUMBER 13-12-00672-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**ARTHUR FREDERICK BROWN,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

### On appeal from the 297th District Court
### of Tarrant County, Texas.

## MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes**
**Memorandum Opinion by Justice Benavides**

Appellant, Arthur Frederick Brown, appeals his conviction for first-degree murder and subsequent punishment of twenty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 19.02(b) (West, Westlaw through 2013 3d C.S.). By three issues on appeal, Brown asserts that (1) insufficient evidence supports his conviction; (2) the trial court

reversibly erred by omitting a requested self-defense instruction in the jury charge; and (3) the trial court reversibly erred by submitting the issue of whether Brown was a habitual felony offender to the jury. We affirm.

## I. BACKGROUND[1]

A Tarrant County grand jury indicted Brown for murder, a first-degree felony, in relation to the January 5, 2010 stabbing death of Terry Scott at a Fort Worth-area apartment complex. Brown pleaded not guilty and was tried before a jury.

On January 5, 2010, Colewanna Gonzalez ("Colewanna")[2] dropped off her brother at the local Greyhound bus station, returned to her apartment complex early that evening, and discovered Brown waiting for her in the complex's parking lot. Colewanna was Brown's ex-girlfriend and Scott's ex-wife. According to Colewanna, Brown was upset with her that day because she "wasn't talking to him." As she approached her apartment, Colewanna directed her daughter, who accompanied her that evening, to enter their second-floor apartment and lock the door while she stayed downstairs to talk to Brown.

Colewanna testified that she and Brown spoke at first, then began to argue. Colewanna recalled that Scott showed up at her apartment on foot a short time later by jumping over the complex's security gate. According to Colewanna, Scott had pre-arranged to visit with her that night to work on some "paperwork" for "food stamps and medical assistance," and also some paperwork to become a truck driver.

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] Colewanna Gonzalez testified that she formerly went by the name "Colewanna Scott."

2

Colewanna recalled that when Scott appeared, Brown stayed near his vehicle, while Scott waited nearby in silence. Brown then allegedly asked Colewanna why Scott was visiting her that evening and whether she was "picking" Scott over him. At that point, Brown purportedly called Scott a "crack head," which caused Brown and Scott to exchange words and challenge one another to leave. Instead, Colewanna asked both of them to leave.

Colewanna testified that Brown repeatedly called Scott a "crack head" and insisted that Colewanna chose Scott over him. Colewanna stated that at that point, Brown told Scott, "I got [sic] something for you," and walked toward the back of his car and retrieved "something" from the car's trunk. Brown then approached Scott and Scott started "backing up" from Brown toward Colewanna's apartment. Colewanna recalled that while backing away from Brown, Scott "picked up some rocks and started throwing them" at Brown. Colewanna admitted that she initially did not know what Brown had retrieved from his car, but eventually after Brown and Scott physically fought on the staircase leading up to her apartment, she realized that it was a knife.

Colewanna testified that the brawl between Brown and Scott looked like they were "punching each other," but that she later discovered that Brown's punches were actually stabs. Colewanna described what she saw next in the following colloquy with the State's prosecutor:

Q.     And when you see this, then what happens?

A.     Then I was like, are you serious, you got a knife.

Q.     So you were able to tell—

3

Q.       Yeah, because they fell.   It was like blood and you could see
         blood.

Q.       And who had the blood on them?

A.       [Scott] had the blood on him.

Colewanna then testified that Brown stopped stabbing Scott once Scott's body "hit the ground."   According to Colewanna, once Scott's body hit the ground, he no longer moved.

Colewanna testified that she was "in shock" by the incident and "didn't really believe it was happening" because the ordeal "happened really fast."   Colewanna stated that she did not call the police because her phone was inside of her apartment with her daughter.   Instead, Colewanna's neighbors called the police, while Brown entered his vehicle and drove away before police arrived.   Colewanna gave a statement about what happened to police investigators and later spoke to Brown by phone and text message.   Colewanna testified that she tried to encourage Brown to turn himself in to the police, but Brown did not believe that Scott was dead.

Colewanna's next-door neighbor, Lance Patsios, also testified.   Patsios told the jury that he walked out of his apartment on the evening of January 5, 2010, after he heard a "ruckus" outside of his door on the staircase.   Patsios observed Brown attack Scott and recalled hearing Scott yell out for someone to call 9-1-1.   Patsios testified that Brown later grabbed a rock and threw it at Scott, and Scott then threw it back at Brown. According to Patsios, Brown then just "took off" and did not return.   Meanwhile, Patsios attended to Scott, who had "blood all over his chest," was in a "very bad" condition, and could "barely" talk.   Patsios testified that at that moment, it sounded like Scott "couldn't

4

breathe."

Tarrant County medical examiner Nizam Peerwani, M.D., autopsied Scott's body and testified about his findings.  According to Dr. Peerwani, by the time Scott arrived at the hospital, he had already expired.  Dr. Peerwani identified Scott's cause of death as a stab wound to the chest and the manner of death as homicide.  Furthermore, Scott's body did not reveal any "defensive wounds," which Dr. Peerwani defined as any injuries that are sustained when a person tries to ward off an attack.  Finally, Dr. Peerwani testified that the autopsy revealed that Scott was stabbed in an upright, fetal position.

Fort Worth Police Department (FWPD) Officer Jim Varnon testified that during his investigation of the scene, he found blood stains throughout the staircase leading up to Colewanna's apartment as well as a blood-stained jacket at the foot of the stairs. FWPD Officer Don Lancaster also investigated the crime scene and testified that he met with the apartment complex's maintenance man who found a knife on the premises that had a "maroon liquid on it that appeared to be blood."  FWPD Detective Mike Carroll testified that DNA testing of the knife revealed that the blood belonged to Scott. According to Detective Carroll, Brown was the only suspect in this case.  Detective Carroll testified that Brown was located and arrested two days after Scott's murder.

Brown testified in his defense.  Brown stated that Colewanna wanted to talk to him on January 5, 2010, so he arrived at her apartment complex and waited for her outside of her apartment.  Brown stated that he and Colewanna stood at the base of the staircase leading up to her apartment to talk when Scott jumped the security fence, ran up the staircase, and started "trash talking" toward Brown from the top of the staircase.

5

According to Brown, Scott then left them alone, but again started "talking trash" and ran down the staircase to try and fight him. Brown described what happened next as follows:

> I stood there. . . . Then he came closer, I came closer. I guess he felt like I wasn't scared, so he grabbed the rocks. . . . He picked up three of them. . . . He started throwing them at me. . . . Then after the last rock, he tried to run up the stairs. . . . I chased behind him. . . .

Brown testified that a fight then ensued between himself and Scott and that they both fell down the staircase. Brown stated that at the bottom of the staircase, Scott ended up on top of him, punched him, and grabbed "little rocks" off the ground "trying to pound [him] with them." According to Brown, he then saw "the knife"[3] and "poked" Scott with the knife "several times." Brown testified that only Colewanna witnessed what happened that day as Scott laid on the ground floor bleeding and screaming for someone to call the police. Brown testified that Colewanna told him to "get out of there," and he complied.

The jury found Brown guilty as charged. During the punishment hearing, the jury found two allegations set out in the State's Habitual Offender Notice "true" and assessed Brown's sentence at twenty-five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. This appeal followed.

## II. SUFFICIENCY CHALLENGE

By his first issue, Brown contends that the evidence is insufficient to sustain the jury's conviction because he established self-defense by more than a preponderance of

---

[3] It is unclear from Brown's testimony where he saw "the knife" during the fight. However, during the State's re-cross-examination, Brown admitted that Scott did not have a knife in his possession that night.

the evidence, which the State failed to disprove beyond a reasonable doubt. In support of this issue, Brown cites the *Jackson v. Virginia* sufficiency standard of review. *See* 443 U.S. 307, 319 (1979). We construe Brown's issue as a legal sufficiency challenge and will analyze it accordingly.[4] *See* TEX. R. APP. P. 38.1(f).

## A. Applicable Law and Standard of Review

A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc). When an appellant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, the question is not "whether the State presented evidence which refuted appellant's self-defense [evidence]." *Id.* Rather,

> We construe the issue as an assertion that the contrary was established as a matter of law. We first search the record for evidence favorable to the finding, disregarding all contrary evidence *unless a reasonable factfinder could not.* If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law.

*Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013) (emphasis in original).

Only if the appellant establishes that the evidence conclusively proves his affirmative defense and "that no reasonable jury was free to think otherwise," may we conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense. *Id.* (internal citations omitted). Applying this standard, we conclude that the defendant is entitled to an acquittal on appeal despite the jury's adverse finding on his affirmative defense only if the evidence conclusively establishes his affirmative defense. *Id.*

---

[4] The court of criminal appeals has held that in our review of a jury's rejection of an affirmative defense in a criminal case, we "continue to use" civil burdens of proof and legal and factual sufficiency standards of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

## B. Discussion

The State charged Brown with first-degree murder. Brown is justified in using force against Scott when and to the degree that Brown reasonably believed the force was immediately necessary to protect himself against Scott's use or attempted use of unlawful force. *See* Tex. Penal Code Ann. § 9.31(a) (West, Westlaw through 2013 3d C.S.); *see also id.* § 9.32(a) (West, Westlaw through 2013 3d C.S.).[5]

We first look at the record for evidence favorable to the jury's finding. We observe that Brown admitted to stabbing Scott "several times" with a knife, after Scott allegedly tried to "pound" him with rocks. Colewanna testified that Brown called Scott a "crack head," which led to the fight. According to Colewanna, Scott then attempted to run up the staircase and threw rocks at Brown during the evasion. Brown argues on appeal that the evidence shows that Scott had a violent reputation, but Brown admitted that he became aware of that reputation only after Scott's recent release from prison.

Brown also testified that only Colewanna witnessed the fight, but Colewanna's neighbor Patsios testified that he witnessed the fight begin on the staircase and end on the ground, where Scott laid bleeding to death. Patsios also testified that he witnessed Brown throw a rock at Scott, which Scott then threw back at Brown. Colewanna stated

---

[5] We also note that the use of force against another is not justified: (1) in response to verbal provocation alone; (2) to resist an arrest or search that the actor knows is being made by a peace officer, or by a person acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under subsection (c) of this statute; (3) if the actor consented to the exact force used or attempted by the other; (4) if the actor provoked the other's use or attempted use of unlawful force, unless: (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (B) the other nevertheless continues or attempts to use unlawful force against the actor; or (5) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was: (A) carrying a weapon in violation of Texas Penal Code section 46.02; or (B) possessing or transporting a weapon in violation of Texas Penal Code section 46.05. Tex. Penal Code Ann. § 9.31(b) (West, Westlaw through 2013 3d C.S.).

8

that Brown told Scott that he "[had] something" for Scott, retrieved an item from the trunk of his car, and started walking toward Scott. Colewanna testified that she initially thought that Brown was "punching" Scott during the fight, but later discovered that Brown had a knife in his hand and was stabbing Scott. Brown also testified that as Scott laid on the ground bleeding and crying for help, Brown did not call the police or stay until the police arrived. Instead, the testimony shows that Brown left the scene and discarded the knife somewhere on the apartment grounds, where it was later located. Colewanna also testified that she encouraged Brown to turn himself into the police, but he refused to believe that Scott was dead. Officer Lancaster testified that following the incident, a bloody knife was found by a maintenance man at the apartment complex and later tested for DNA. According to Detective Carroll, the blood on the knife matched Scott's DNA. Finally, Dr. Peerwani testified that Scott died of a stab wound to the chest and was stabbed in an upright, fetal position.

Although Brown's testimony supports his theory of self-defense, such evidence is subject to a credibility assessment and is evidence that a reasonable jury was entitled to disbelieve, in light of the differing stories told by Brown, Colewanna, and Patsios. *See Matlock*, 392 S.W.3d at 670. Therefore, based on this record, we conclude that Brown did not conclusively prove his self-defense theory and sufficient evidence supports the jury's finding. *See id.* Brown's first issue is overruled.

### III. SELF-DEFENSE INSTRUCTION

By his second issue, Brown argues that the trial court committed reversible charge error during the guilt-innocence phase of his trial by failing to include his requested instruction on the law of "real and apparent danger" as it related to his theory

9

of self-defense.

## A. Standard of Review

Our first duty in analyzing a jury-charge issue is to determine whether error exists. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If we find error, we analyze it for harm. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved by objection. *Id.* If the error was preserved by objection, as here, we will reverse if we find "some harm" to the defendant's rights. "Some harm" means any harm, regardless of degree. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (en banc); *see also Atkinson v. State*, 934 S.W.2d 896, 897 (Tex. App.—Fort Worth 1996, no pet.). Under a "some-harm" analysis, we are obligated to determine whether the error was "calculated to injure the rights of the defendant." *See Arline*, 721 S.W.2d at 352. We consider the harm in context of the entire record. *Id.*

Finally, the trial court shall, before the argument begins, deliver to the jury a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2013 3d C.S.).

## B. Discussion

The trial court provided the following relevant instruction in the jury charge related to self-defense:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself or another

10

against the other person's use or attempted use of unlawful force.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such force is immediately necessary to protect himself or another against the other person's use or attempted use of unlawful deadly force.

The use of force or deadly force against another is not justified in response to verbal provocation alone, if the actor consented to the exact force used or attempted by the other, or if the actor provoked the other's use or attempted use of unlawful force, unless the actor abandons the encounter, or clearly communicated to the other his intent to do so reasonably believing he cannot safely abandon the encounter, and the other nevertheless continues or attempts to use unlawful force against the actor.

By the term "deadly force" is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

By the term "reasonable belief," as used herein, is meant a belief that would be held by an ordinary and prudent person in the same circumstances as [Brown].

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

Brown objected to the instruction and requested the following additional language:

When a person has been attacked with unlawful deadly force or he reasonably believes he's under attack or attempted attack with unlawful deadly force and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, that our law excuses or justifies such person resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary viewed from his standpoint at the time to protect himself or another from such attack or attempted attack.

And it is not necessary that there be an actual attack or attempted attack as a person has a right to defend his life and person or the life and person of another from apparent danger fully and to the same extent as he would have had the danger been real, provided that he acted upon a reasonable

11

apprehension of danger and it appears to him from his standpoint at the time and that he reasonably believes such force was immediately necessary to protect himself or another against the other person's use or attempted use of unlawful deadly force.

You are further instructed that in determining the existence of real or apparent danger, it is your duty to consider all of the facts and circumstances in evidence in the case before you, and consider the words, acts, and conduct, if any, of Terry Scott at the time and prior to the time of the alleged stabbing or cutting, if any, and considering such circumstances, you should place yourself in the defendant's position at that time and view them from his standpoint alone.

The trial court denied the request and explained that the requested language was not included in the self-defense statute.

On appeal, Brown argues that the requested instruction is "straight out of the pattern jury charges" and is "required . . . no matter whether the Judge believes it or not and no matter whether the evidence upon which it is raised is slight or overwhelming." We disagree. First, we note that a defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). Such an instruction was given in this case as shown in the charge. The question then turns upon whether the trial court erroneously denied Brown's additional instruction on "real and apparent danger."

Texas courts have held that when a defendant claims self-defense, his rights are fully preserved (and the concept of "apparent danger" is properly presented) when a jury charge (1) states that a defendant's conduct is justified if he reasonably believed that the deceased was using or attempting to use unlawful deadly force against the defendant,

and (2) correctly defines "reasonable belief." *Bundy v. State*, 280 S.W.3d 425, 430 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Valentine v. State*, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979)). Furthermore, the Texas Court of Criminal Appeals has held that if the instruction is not derived from the penal code, it is not "applicable law" for purposes of the charge under article 36.14 of the code of criminal procedure. *See Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007).

Here, the trial court charge instructed the jury that "[a] person is justified in using deadly force against another if he would be justified in using force against the other . . . when he reasonably believes that such force is immediately necessary to protect himself or another against the other person's use or attempted use of unlawful deadly force." Further, the charge defined "reasonable belief" as a belief that would be held by an ordinary and prudent person in the same circumstances as Brown.

We hold that these instructions were without error and tracked the definitions relating to self-defense, deadly force, and reasonable belief as provided by the penal code. *See Walters*, 247 S.W.3d at 214; *Valentine*, 587 S.W.2d at 431; *see also* TEX. PENAL CODE ANN. §§ 1.07(a) (West, Westlaw through 2013 3d C.S.). Accordingly, we overrule Brown's second issue.

## IV. HABITUAL OFFENDER FINDING[6]

---

[6] As a preliminary matter, the State filed a motion with this Court under rule of evidence 202 to take judicial notice of the Ohio Revised Code section 2919.25 and Illinois Criminal Code, section 24-1.1. *See* OHIO REV. CODE ANN. § 2919.25 (West, Westlaw through 2013); 720 ILL. COMP. STAT. ANN. 5/24-1.1 (West, Westlaw through 2014 R.S.). We hereby grant the State's motion and take judicial notice of the pertinent Ohio and Illinois statutes as they are necessary to the disposition of this appeal. *See* TEX. R. EVID. 202; *Tate v. State*, 120 S.W.3d 886, 889 (Tex. App.—Fort Worth 2003, no pet.).

13

By his final issue, Brown argues that the trial court reversibly erred by submitting to the jury the issue of whether Brown was a habitual felony offender "where the proof failed to show the required convictions."

## A. Applicable Law

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. *Id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921–22 (internal citations omitted).

Section 12.42(c)(1) of the penal code states the following:

If it is shown on the trial of a felony of the first degree that the defendant has previously been finally convicted of a felony other than a state jail felony . . . on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 15 years. In addition to imprisonment, an individual may be punished by a fine not to exceed $10,000.

TEX. PENAL CODE ANN. § 12.42(c)(1) (West, Westlaw through 2013 3d C.S.). A defendant shall receive an automatic punishment of life if the defendant has been convicted of a specifically enumerated offense, and has been previously convicted of another specifically enumerated offense. *See id.* § 12.42(c)(2).

If a defendant convicted of any non-state-jail felony has two prior, sequential felony convictions, the minimum sentence is twenty-five years and the maximum is ninety-nine years or life; this is the Texas "three strikes" law. *Anderson v. State*, 394 S.W.3d 531, 535 (Tex. Crim. App. 2013) (citing TEX. PENAL CODE ANN. § 12.42(d) (West, Westlaw through 2013 C.S.).

### B. Discussion

Prior to trial in this case, the State notified Brown that it sought to enhance Brown's potential punishment range to twenty-five years to ninety-nine years or life imprisonment under the "three strikes" law. *See* TEX. PENAL CODE ANN. §§ 12.42(c)(1), (d). Specifically, the State alleged that in April 2003, Brown was convicted in Hamilton County, Ohio for "the felony offense of domestic violence"[7] and was convicted in 1993 for "possession of a firearm by a felon" in Cook County, Illinois.[8] Prior to the jury's deliberations on punishment, Brown pleaded "not true" to these two prior convictions.

During the punishment phase of trial, the trial court admitted, over Brown's objections, State's Exhibits 42 and 45, referred to, respectively, as the Ohio and Illinois judgments. The Ohio Judgment was entered on April 28, 2003 by the Court of Common Pleas in Hamilton County and shows that: (1) Brown was placed on probation

---

[7] The trial court case number is listed as: B0108166.

[8] The trial court case number is listed as: 92CR25912.

15

related to the domestic violence charge, (2) Brown was charged with a violation of one of his conditions of probation; (3) the Hamilton County, Ohio court found that he violated the conditions of his probation, and (4) Brown's probation was revoked and he was sentenced to eight-months of confinement in the Ohio Department of Corrections. The Illinois Judgment was entered on February 3, 1993 and shows that Brown was adjudged guilty of the charge of "unlawful use of a firearm by a felon." The Cook County, Illinois court sentenced Brown to three years' imprisonment in the Illinois Department of Corrections. Under *Flowers,* the State met its burden of proof beyond a reasonable doubt by producing documentary proof of the existence of the prior conviction and Brown's identity as the person convicted. *See Flowers*, 220 S.W.3d at 922 (holding that "[a]ny type of evidence, documentary or testimonial, might suffice" to prove a defendant's prior conviction); *Jaynes v. State*, 216 S.W.3d 839, 845 (Tex. App.—Corpus Christi 2006, no pet.).

For the purpose of enhancing punishment, an out-of-state conviction is classified as a third-degree felony when "imprisonment in the Texas Department of Criminal Justice or another penitentiary is affixed to the offense as a possible punishment." TEX. PENAL CODE ANN. § 12.41(1) (West, Westlaw through 2013 C.S.); *see Trotti v. State*, 698 S.W.2d 245, 246 (Tex. App.—Austin 1985, writ ref'd). In this case, Brown was sentenced to eight months of confinement in the Ohio Judgment and three years' imprisonment in the Illinois Judgment. Therefore, pursuant to penal code section 12.41(1), the trial court did not err by classifying the Ohio and Illinois offenses as third-degree felonies for purpose of enhancing punishment and submitting the issue to the jury for consideration under the "three strikes" law. *See* TEX. PENAL CODE ANN. §

16

12.41(1); *Trotti*, 698 S.W.2d at 246; *see also Anderson*, 394 S.W.3d at 535. We overrule Brown's final issue.

## V.  CONCLUSION

The trial court's judgment is affirmed.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
10th day of April, 2014.